**SMITH–BLAIR, INC., a corporation, Plaintiff,**

v.

**R. H. BAKER & CO., a corporation, and Edward H. Schustack, an individual, Defendants.**

**Civ. No. 18823–S.**

United States District Court
S. D. California,
Central Division.

Dec. 3, 1962.

for this, the Ninth Circuit? The cases to which reference is made are all familiar to counsel and are cited in this memorandum.

This case was submitted to the jury on a special verdict. The questions put to the jury bore on the questions of validity and infringement. They were divided into two groups. In the first group they were listed by alphabetical letters A through D and were intended to cover the factual matters involved in the determination of the issue of validity. Those in the second group were numbered 1 through 8 and were intended to cover the factual matters involved in issue of infringement. The jury was instructed to answer the questions seriatim commencing with A unless or until their answer should be such as to require them to return to the courtroom with the verdict in accordance with the instructions which were a part of the verdict. The fact that the questions were divided into groups as stated is not to say that the answers given in the first group had obsolutely nothing to do with the issue of infringement.

The jury followed the instructions of the Court, answering questions A through D and question No. 1 of the second group and returned to the courtroom with the verdict as instructed in case the answer to this question should be in the affirmative. In this manner the Court examined into the question of validity first.

The authorities indicate that should the patent be obviously invalid, this determination should be made in the public interest, even though the accused device does not infringe.[2] A judgment of non-infringement and nonvalidity is acceptable, but in no event should a judgment hold a patent valid, but not infringed.[3]

A. Donham Owen, Robert E. Wickersham, Melville Owen, San Francisco, Cal., Collins Mason, William R. Graham, Los Angeles, Cal., Ernest R. Finney, Amarillo, Tex., for plaintiff.

C. G. Stratton, Neil G. McCarroll, Robert L. Harrington, Los Angeles, Cal., for defendants.

ALBERT LEE STEPHENS, JR., District Judge.

Several motions made after verdict are pending and a proposed form of Judgment has been submitted, to which objections are pending. These matters raise as a primary question, what is the "better practice"[1] for the District Court to follow in a case such as this in the light of the pronouncements of the Supreme Court and of the Court of Appeals

1. Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644 (1945).

2. Patent Scaffolding Co. v. Up-Right, 194 F.2d 457 (9th Cir., 1952).

3. Altvater v. Freeman, 319 U.S. 359, 363, 63 S.Ct. 1115, 1117, 87 L.Ed. 1450 (1943); Bergman v. Aluminum Lock Shingle Corp. of America, 251 F.2d 801 (9th Cir., 1958); Kemart Corp. v. Print-

■ Various routes have been followed in an effort to comply with what the Supreme Court has commended as the better practice in cases involving the issues of validity and infringement. The decisions which have resulted, taken together, suggest that where the public interest would be served by a determination that a patent is invalid, this issue should be inquired into fully as having the greater public importance. On the other hand, where there is no infringement and invalidity is not obvious, the public interest is better served by not adjudicating matters which are unnecessary to a decision which can rest more easily upon lack of infringement.

The public interest will be served by a declaration of invalidity if the patent is "obviously invalid." On the other hand, if it is not obviously invalid and such a determination involves the careful consideration of conflicting evidence or presents a close question of law when all facts are considered, a determination of this question in face of lack of infringement of the patent in unnecessary.[4]

■■ In view of the special verdict, it is not possible for the Court to say that the patent is "obviously invalid." Since the patent is not obviously invalid, it does not stand as a "scarecrow" or "zombie" patent and the determination of validity or invalidity may properly await a time when such determination is necessary.[5] Should the Court or jury determine that the patent is valid, such a

determination would properly be expunged from the record.[6] The matter of validity having been thoroughly gone into and the special verdict of the jury having been received, and it appearing therefrom that the patent is not "obviously invalid," it would be a departure from the "better practice" for the Court to further pursue the matter.

■ In any event all of the facts relevant to the issue of validity having been determined by the jury, all that remains to be done regarding this issue is to decide the question of law, the validity or non-validity of a patent in the final analysis being a question of law.[7] If the issue as to validity is not in fact immaterial to the disposition of the cause, this question of law can as well be determined by an Appellate Court as by this one, there being no motion for judgment notwithstanding the verdict.

Turning now to the issue of infringement, in answering question No. 1,[8] the jury determined the following at the very least: If any element of the accused device is to be found in Claims 1 and 2 of the patent in suit, this same element was in the public domain in 1953 when the accused device was designed. Any element of the accused device which was not to be found in the public domain at that time was new over the patent in suit. The term "public domain" refers to prior art not covered by any existing patent. The patent in suit was intended to be and is excluded by this term.

---

ing Arts Research Lab. Inc., 201 F.2d 624 (9th Cir., 1953); Patent Scaffolding Co. v. Up-Right, 194 F.2d 457 (9th Cir., 1952).

4. Patent Scaffolding Co. v. Up-Right, 194 F.2d 457 (9th Cir., 1952).

5. Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 65 S.Ct. 1143, 89 L. Ed. 1644 (1945); Kemart Corp. v. Printing Arts Research Lab. Inc., 201 F.2d 624 (9th Cir., 1953); Wabash Corp. v. Ross Electric Corp., 187 F.2d 577 (2nd Cir., 1951).

6. Electrical Fittings Corp. v. Thomas & Betts Co., 307 U.S. 241, 59 S.Ct. 860, 87 L.Ed. 1263 (1939).

7. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950); Bergman v. Aluminum Lock Shingle Corp. of America, 251 F.2d 801 (9th Cir., 1958).

8. " 'Is the accused device composed of elements which were either new as compared with Claim 1 of the patent in suit or already in the public domain in 1953 at the time said device was designed?' "

"The jury was instructed, 'If your answer to the above question is "Yes", the foreman should so indicate the jury's answer and he should then date and sign the verdict without answering any of the other questions and you should then return to the courtroom with the verdict.' "

The question does not ask merely whether the elements are either new or old. Newness is a relative matter and this question relates to the patent in suit. Where it speaks of newness, it is clearly newness over the patent in suit. Insofar as infringement of the patent in suit is concerned, it would not matter if the accused device should be an absolute copy of some other device which was patented after the patent in suit was issued. So, "new" doesn't necessarily mean an element which first appeared in the accused device. It is only necessary that it be new over the patent in suit.

The question doesn't ask whether any element is old thereby employing a relative term. It asks whether or not every element of the device which isn't new can be found in the public domain. "Public domain" is a definite term which had been frequently used and defined during the more than three weeks of trial.

The point is now made that this question is not as decisive of the issue as it was intended to be because conceivably the patent in suit was composed of elements which were in the public domain in 1951 when application was filed and that the accused device is composed of the same elements or their equivalents operating together in substantially the same way and producing substantially the same result.

■ From the jury's answer to this question, it is clear that if infringement is a possibility at all, the patent in suit is at best a combination of old elements and the accused device is, too. The claims of such patents are to be strictly construed.[9] The differences between the claims of the patent in suit and the accused device are so marked as to be obvious. The expert testimony that the claims read on the accused device was coupled with opinions of the same witness that the claims are not to be strictly construed on the assumption that some elements of the patent are new and the coverage therefore somewhat basic and broad.

The accused device does not have an L-shaped block and the fulcrum by means of a ball and socket is not the equivalent of the pivot point of engagement of the patent in suit, to mention the most obvious characteristics.

■ At the time the verdict was rendered, it was taken to mean that the jury found no infringement which is obviously the right conclusion. The later effort to impeach this verdict by affidavits signed by some of the jurors is of no value whatsoever.[10] It is ordered that the said affidavits be stricken.

The objections which defendants made to question No. 1, which the jury answered, were the same as those made to it when it stood as proposed question No. 8. These objections were overruled. The other seven questions which preceded it would eliminate any form of uncertainty. As question No. 8, there was no accompanying direction to the jury which indicated that the question was considered as dispositive of the issue of infringement. When the Court realigned the order of questions so that what had been proposed question No. 8 became question No. 1 and added the direction to the jury in connection with this question, indicating that if the question should be answered in the affirmative, no other questions relating to infringement would be submitted to the jury, it was counsel's duty before the case was submitted to the jury, to demand the submission of any other issues of fact which might be necessary for a complete disposition. This, counsel for defendant failed to do, but instead was content to rest upon his objections without suggesting other questions or demanding that one or more of the remaining seven questions also be submitted or that any additional question be submitted.

■ Under the rule and the state of the record, a trial by jury is waived as to any other question not demanded

---

9. Magnavox Co. v. Hart & Reno, 73 F.2d 433 (9th Cir., 1934).

10. McDonald v. Pless, 238 U.S. 264, 35 S. Ct. 783, 59 L.Ed. 1300 (1915).

to be placed before the jury. Further, such findings as may be necessary to sustain the judgment of non-infringement are to be implied. Rule 49(a), F.R.Civ.P., in pertinent part reads:

" * * * The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict."

This was put in the rules for the express purpose of giving the trial judges an opportunity to be sure that the special verdict is complete and to further assure that the investment of time, expense and inconvenience in the trial would not be wasted in the event of some inadvertent omission.

The record will show that defense counsel have been alert in the protection of their clients' interests and have painstakingly documented and orally recorded their views for the guidance of the Court. One of such views was that the Court should submit the general issue to the jury in one form or another.

After the Court had determined to submit to the jury a special verdict under Rule 49(a), the defense never ceased to urge the submission of questions which called for a general verdict, preferably alone or combined with other questions as contemplated in Rule 49(b).

■■■ The record must be protected for purposes of appeal, but it is even more important to secure a trial free from error. Our judicial system functions on the assumption that a fair trial, free from error, will produce a right result. It is necessary for all parties to

have confidence in this assumption and to bend every effort to aid its accomplishment. The manner in which a case is to be submitted to the jury is a matter which lies within the discretion of the trial judge. Even after the judge has announced how he intends to exercise this discretion, it may not be inappropriate to urge reconsideration or modification, but failing to prevail in this effort, it is most essential that all counsel guide the Court along the course elected, whether they would have chosen the same course or not. It is not enough to object to a proposed instruction or the form or phraseology of a question which is part of a special verdict. If the proposed special verdict is inadequate or faulty, a substitute question or a revision should be suggested or the submission of an additional question or questions should be demanded so that the special verdict will be complete enough to accomplish its purpose. When a special verdict is to be submitted pursuant to F.R.C.P. 49(a) a demand for a verdict pursuant to F.R.C.P. 49(b) does not satisfy because it is not responsive to the requirement of section 49(a) that:

" * * * each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury."

The Court considers that the jury's verdict is a finding of fact that the accused device does not infringe Claim 1 of the patent in suit. Interpreted in the light of the stipulation that such a finding as to Claim 1 would also be a finding to the same effect as to Claim 2, this is a finding that the accused device does not infringe the patent in suit. If the jury's verdict is inadequate or incomplete or in any other way insufficient to constitute a complete finding to this effect, the Court does now find as a fact that the accused device does not infringe the patent in suit.

It is hereby ordered as follows:

1. All of defendants' motions filed November 27, 1962, are denied for the reasons above stated.

2. Affidavits filed in support of said motions are ordered stricken.

3. The proposed form of judgment shall be amended to conform to the views expressed in this memorandum.

4. Defendants' objections and proposed deletions to plaintiff's proposed findings of fact and conclusions of law and judgment are off calendar as moot. Defendants' proposed amendments to the same are denied for the reasons expressed in the foregoing memorandum.