Fern YORK, et al., Plaintiffs,

v.

CITY OF SAN PABLO, et al.,
Defendants.

C–83–3186 EFL.

United States District Court,
N.D. California.

June 11, 1985.

Nancy Kramer, Martinez, Cal. Dennis Cunningham, San Francisco, Cal., for plaintiffs.

Sellar, Hazard, Snyder, Kelly & Fitzgerald, Walnut Creek, Cal., for defendants.

## ORDER RE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND JUDGMENT ON THE PLEADINGS

LYNCH, District Judge.

This action involves claims arising out of the death of Steven Thompson, who was shot and killed by a San Pablo police officer in August 1982. The complaint alleges causes of action under state tort law and under 42 U.S.C. section 1983. The defendants' motions for judgment on the pleadings and for summary judgment were heard by the Court on February 22, 1985. At that time, the Court granted the parties an additional period of time in which to file supplemental factual material relating to the issue of inadequate police training. Having received the supplemental papers from the parties, the Court now rules as follows.

I. Motion for Judgment on the Pleadings

The defendants assert two grounds for granting their motion for judgment on the pleadings: (1) that the plaintiffs are not proper parties to bring this action and (2) that no section 1983 claim is stated since the decedent was not deprived of any constitutional right. Although the defendants' argument regarding the capacity of the plaintiffs to bring this lawsuit is well-taken, the Court considers this aspect of the

motion moot in light of the plaintiffs' intention to establish an intestate estate for the deceased and amend their complaint to reflect that the action is being brought by the estate's administrator. The defendants' second argument for dismissal, that no constitutional violation has been alleged here due to the availability of post-deprivation tort law remedies, is seriously undercut by the Ninth Circuit's decision to rehear *en banc* several recent cases which address this precise issue. *See Haygood v. Younger*, 729 F.2d 613 (9th Cir.1984). Because no decision has been issued in *Haygood*, the defendants' motion for judgment on the pleadings is denied without prejudice.

II. Motion for Summary Judgment by the Defendant-Officers (Hearn, Alforno, and Hamilton)

■ "[P]olice officers have a qualified immunity under section 1983 such that they are shielded from liability if they reasonably believe in good faith that their actions are constitutional." *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir.1981), *cert. denied*, 459 U.S. 829, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982); *see also Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 78 L.Ed.2d 288 (1967); *Gonzales v. City of Peoria*, 722 F.2d 468, 479 (9th Cir.1983). In order to prevail against the defendant-officers, the plaintiffs must make two separate showings: (1) that the police officers were not justified in their use of deadly force and (2) that the officers did not reasonably believe in good faith that deadly force was warranted. *Smiddy v. Varney*, 665 F.2d at 266. The question whether the officers were justified in shooting the decedent is determined by California law, which provides that police officers may use deadly force where the circumstances "reasonably create a fear of death or serious bodily harm to the officer or another." *Kortum v. Alkire*, 69 Cal.App.3d 325, 333 (1977). The second issue, whether the officers had a good faith belief in the validity of their conduct, involves a similar inquiry in this case since "good faith" is tested according to the objective reasonableness of the officers' actions, not their subjective thought processes. *Harlow v. Fitzgerald*, 457 U.S. 800, 816–19, 102 S.Ct. 2727, 2737–39, 73 L.Ed.2d 396 (1982).

■ The Court finds that there is a question of fact as to whether the officers acted lawfully and with an objectively reasonable belief in the validity of their own conduct. Although the essential facts leading up to the shooting are not in dispute,[1] there appears to be some doubt as to whether the decedent's hand was raised in a shooting position when he was shot by Officer Hearn,[2] and whether the officers could reasonably have believed under these circumstances that they or other persons were in danger.[3] The defendant-officers' motion for summary judgment is therefore denied.

III. Motion for Summary Judgment by the Municipal and Supervisory Defendants (City of San Pablo, Russell, Sylstra, Verdi, and Miller)

■ In *Monell v. Department of Social Serv. of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that municipalities and other lo-

---

1. The parties agree that the police received reports of someone "acting crazy" and shooting a gun, that the decedent was told to drop his gun and exit the house, that the decedent came out of the house with a gun in his hand and did not drop the gun when commanded to do so by the officers.

2. Although the coroner is of the opinion that the decedent's arm was in a horizontal position at the time of the shooting, this conclusion is contradicted by the accounts of several eyewitnesses. There also appear to be some inconsistencies in the statements of Officers Hearn and

Alforno regarding whether the deceased advanced towards them and whether the deceased was carrying the gun in his right or left hand.

3. Although the Court might otherwise be inclined to find the officers' conduct reasonable in this situation, especially in light of the fact that the decedent was carrying a gun and disregarding the commands of the police, the affidavit of Frank Saunders, plaintiffs' expert witness, creates a sufficient question of fact to warrant presenting this issue to the jury.

cal governmental entities can be held liable under section 1983 for constitutional deprivations that are the result of a governmental custom, policy, ordinance, regulation, or decision, whether or not the policy has been formally approved or adopted. It is clear, however, that the mere right to control employees is an insufficient basis for imposing liability on municipalities or their supervisory personnel. *Monell,* 436 U.S. at 663–64 n. 7, 98 S.Ct. at 2022 n. 7; *Ybarra v. Reno Thunderbird Mobile Home Village,* 723 F.2d 675, 680–81 (9th Cir.1984); *May v. Enomoto,* 633 F.2d 164, 167 (9th Cir.1980). Instead, there must be independent evidence of a direct causal link between the misconduct of the individual officers and the acts of the defendants. *See Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).

Relying on the teachings of *Monell* and *Rizzo,* the vast majority of lower federal courts have rejected simple negligence as the standard for supervisory liability and have required a higher degree of malfeasance, which has been described in various cases as gross negligence, recklessness, or "deliberate indifference." *See Owens v. Haas,* 601 F.2d 1242 (2d Cir.), *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979); Annot., 70 A.L.R.Fed. 17 (1984). A recent United States Supreme Court case, *City of Oklahoma City v. Tuttle,* — U.S. —, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), suggests that even gross negligence may not be sufficient to meet the "policy" requirement of *Monell.* The plurality decision in *Tuttle* explicitly left open the question whether "a more conscious decision on the part of the policymaker would be required." *Id.* 105 S.Ct. at 2436 n. 7. The Court nevertheless applies the standard of gross negligence here since it clearly represents the minimum standard for imposing liability on the municipal and supervisory defendants ("City defendants").

Plaintiffs' complaint sets forth essentially two theories of liability against the City defendants. First, plaintiffs allege that the City defendants failed to act "firmly, forthrightly, and impartially" in responding to claims of misconduct against members of the San Pablo Police Department ("Department"). The Ninth Circuit appears to have recognized a cause of action for a supervisor's failure to correct misconduct of which he has notice. *See Ybarra,* 723 F.2d at 680–81 (citing *McClelland v. Facteau,* 610 F.2d 693, 697 (10th Cir.1979)). Under this theory, the issue is whether the City defendants either failed to act or acted inadequately in the face of actual or imputed knowledge of a pattern of police misconduct. Recognizing that the standard to be applied is gross negligence, the plaintiff must show that persons in a position of responsibility were so indifferent to prior incidents of misconduct as to tacitly encourage, condone, or acquiesce in such behavior. *See, e.g., Turpin v. Mailet,* 619 F.2d 196 (2d Cir.), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980); *Languirand v. Hayden,* 717 F.2d 220 (5th Cir.), *reh'g. denied,* 721 F.2d 819 (1983), *cert. denied,* — U.S. —, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984); *Salinas v. Breier,* 695 F.2d 1073 (7th Cir.1982), *cert. denied,* 464 U.S. 835, 104 S.Ct. 119, 78 L.Ed.2d 118 (1983); *McClelland v. Facteau,* 610 F.2d at 697, *Leite v. City of Providence,* 463 F.Supp. 585 (D.R.I.1978).

In this case, the evidence relating to whether there has been official acquiescence in police misconduct is straightforward and undisputed. Between January 1, 1978 and August 14, 1982, the date of the Thompson shooting, the Department received six complaints alleging that members of the Department had used excessive force [4] and seven complaints about conduct other than the use of force.[5] In addition, there were five occasions during this period of time where a San Pablo Police Officer discharged his firearm, including the inci-

---

**4.** These incidents occurred on 8/28/78, 9/4/78, 9/25/78, 3/12/79, 5/24/80, and 5/9/81 (Mankamyer Decl.).

**5.** These incidents occurred on 6/8/80, 6/27/80, 10/24/80, 2/8/81, 10/14/81, 12/8/81, and 2/11/82 (Mankamyer Decl.).

dent complained of here.[6] All of these matters were treated in accordance with the Department's formal complaint procedures. (City of San Pablo Police Department, Departmental Order # 6, Rev. Mar. 1981). These procedures provide that all officer-involved shootings and citizen complaints of misconduct are to be investigated by a supervisor in the Department, who then submits a written report to the Division Commander for a recommendation as to whether disciplinary action is warranted, and ultimately to the Chief of Police for final disposition.

Reviewing the record of complaints and the Department's personnel investigation procedures in the light most favorable to plaintiffs, the Court is unable to find any evidence that would tend to support plaintiffs' allegation that the Department had a policy of ignoring or condoning police misconduct. The summaries of the investigation reports provided by the parties do not indicate any systematic pattern of police misconduct or violence. (Mankamyer Decl. in Support of Defendants' Motion for Summary Judgment; Aff. of Nancy A. Kramer in Support of Plaintiffs' Supplemental Opposition to Motion for Summary Judgment). On the contrary, the incidents appear to be discrete occurrences involving several different officers. Disciplinary action was taken in four of the misconduct/excessive force cases, and although no further action was taken in any of the police shootings, the facts of those cases indicate that the officers were justified in their use of firearms.

In response to this evidence, the plaintiffs offer nothing more than argument. A policy of acquiescing in misconduct cannot be inferred from the Thompson incident itself. *Tuttle*, 105 S.Ct. at 2436; *Ybarra*, 723 F.2d at 681; *McClelland*, 610 F.2d at 697. The plaintiffs do not charge that the complaints received by the Department con-stitute an unusually large number for a city the size of San Pablo. Nor do the plaintiffs present any independent evidence to indicate that the Department's investigation policy is a sham, *cf. Popow v. City of Margate*, 476 F.Supp. 1237, 1247 (D.N.J.1979) (question of fact created by non-existence of departmental investigation procedure), or that there were unreported acts of misconduct known by the police hierarchy, *cf. McClelland*, 610 F.2d at 697 (question of fact created by widespread and credible publicity of police misconduct). Under these circumstances, the Court must grant summary judgment as to this theory of liability in favor of the defendants.

The second general theory of liability against the City defendants is based on the Department's failure to ensure that its officers were adequately trained. *See Ybarra*, 723 F.2d at 680–81; *McClelland*, 610 F.2d at 696.[7] As with the failure to exercise proper supervision and discipline, the plaintiffs must show gross negligence amounting to the creation of a *de facto* policy of inadequate training. *See, e.g., Languirand v. Hayden*, 717 F.2d at 227–28; *Lenard v. Argento*, 699 F.2d 874 (7th Cir.), *cert. denied*, 464 U.S. 815, 104 S.Ct. 69, 78 L.Ed.2d 84 (1983); *Harlee v. Hagen*, 538 F.Supp. 389 (E.D.N.Y.1982); *Cattan v. New York*, 523 F.Supp. 598 (S.D.N.Y.1981).

In support of their motion for summary judgment on this theory, the defendants have provided uncontroverted evidence regarding the qualifications and training required for members of the Department. Pursuant to the Department's established policy, all new officers are first required to pass a physical examination and an extensive background and character check. The officers are then assigned to a law enforcement academy, as required by state law, which they attend full-time for approximately four months. (Sylstra Depo. at

---

**6.** These incidents occurred on 10/18/80, 11/1/80, 12/13/80, 3/4/81, and 8/14/82 (Mankamyer Decl.).

**7.** Although plaintiffs' complaint sets forth their inadequate training allegation in four separate causes of action, all of the claims relate to the general notion that the Department failed to train the officers to deal with the situation that arose in this case.

9–11.) Officer Hearn successfully completed his basic police academy course at Los Medanos College, which is certified as an accredited police training center by the Commission on Peace Officer Standards and Training of the State of California. (Glennon Decl., ¶ 8). While at the academy, Officer Hearn received the basic training required of all police officers in the State of California, including instruction in the use of deadly force. (Tamborski Decl.). The other officers at the scene of the Thompson shooting also received the necessary training required by state law. (Glennon Decl., ¶ 12). In addition, the uncontradicted deposition testimony of the San Pablo Police Chief shows that members of the Department receive twelve weeks of field training following their graduation from the academy, and work under the supervision of an experienced officer for the first two months on the job. (Sylstra Depo. at 9–11.) Furthermore, there is recurrent training, both formal and informal, for all experienced officers under the supervision of a training manager or coordinator. (Sylstra Depo. at 7–8.) The Department's policy with respect to the use of deadly force is set forth in a written bulletin, with which all of the officers were familiar. (Hamilton Depo. at 46).

Where, as here, a party has provided sufficient evidence to support a motion for summary judgment, it is incumbent upon the party opposing the motion to come forward with specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). In this case, the only evidence offered by the plaintiffs to disprove the defendants' assertion that competent training was provided to members of the San Pablo Police Department is the declaration of Frank Saunders. Although Mr. Saunders makes various comments about the training received by the officers involved in the Thompson shooting, Mr. Saunders concedes that those comments do not reflect his own personal knowledge, but rather are derived exclusively from his evaluation of the circumstances surrounding the Thompson shooting. (Saunders Depo. at 93.) It is well-established, however, that reference to a single incident of misconduct is not sufficient to raise an issue of fact as to a policy or custom of inadequate training. *Tuttle*, 105 S.Ct. at 2436; *Ybarra*, 723 F.2d at 681. Summary judgment is therefore granted on this theory as to all claims against the City defendants.

IT IS SO ORDERED.