**John WARD, et al., Plaintiffs,**

v.

**The CITY OF SAN JOSE, et al., Defendants.**

**No. C 87–20518 RPA.**

United States District Court, N.D. California.

Jan. 25, 1990.

William B. Chapman, David Nied, Rogers, Joseph, O'Donnell & Quinn, San Francisco, Cal., William Edward Baugher, The Victorian Law Offices, San Jose, Cal., for plaintiffs.

Ralph C. Greene, Chief Trial Atty., Joan R. Gallo, City Atty., Office of the City Attorney, San Jose, Cal., for defendants.

## AMENDED ORDER FOR PUBLICATION RE MOTIONS FOR J.N.O.V. OR FOR NEW TRIAL

AGUILAR, District Judge.

### I. INTRODUCTION

Plaintiffs in this action are the estate of Anton Ward, Anton Ward's parents, his sisters, his putative spouse Delissa Ann Ward, and her daughter Sabrina Prior. Delissa Ann Ward and Anton Ward's sisters were previously dismissed from this case and are not parties to the present motions. Defendants are the City of San Jose, the Chief of Police for the City of San Jose Joseph McNamara, and the three officers that shot and killed Anton Ward, Officers Renteria, Rodrigues, and Vasquez.

The Court has before it the various motions filed by the parties pertaining to the jury's verdict after Phase II of the trial of this case. The special verdict form returned by the jury at the close of Phase II included answers to two sets of questions. One set went to defendants' liability under 42 U.S.C. § 1983 and the other went to their liability under California's wrongful death statute. As to liability under 42 U.S.C. § 1983, the jury found all defendants to have violated Anton Ward's constitutional rights and that the violations caused his death. In the wrongful death section, the jurors answered "No" to the question of whether the shooting of Anton Ward was either intentional or unjustified. The jurors then found defendants to have been negligent, but that their negligence was not the proximate cause of Anton Ward's death. No question on whether defendants had acted recklessly was presented to the jury.

At the close of Phase III (the damages phase) of the trial, the defendant officers renewed their motion for judgment notwithstanding the verdict and, in the alternative, requested a new trial. In addition, plaintiffs Delissa Ann Ward and Sabrina Prior filed similar motions.

### II. DISCUSSION

The motions filed by the parties suggest that there are four alternative courses of action available to the Court. First, the Court could find the Special Verdict irreconcilably inconsistent and resubmit the case to the jury. Second, the Court could find the Special Verdict consistent and enter judgment on the verdict. Third, the Court could find the Special Verdict consistent and enter judgment notwithstanding the verdict. Finally, the Court could order that a new trial be conducted. Each alternative is discussed below.

### A. RESUBMITTING THE CASE TO THE JURY

The jury's answers on the Special Verdict have created some confusion among the parties because of an apparent inconsistency between the answers given in the civil

rights section and those given in the wrongful death section. Both the plaintiffs and the defendants contend that the Special Verdict mandates judgment in their favor or, in the alternative, the case should be resubmitted to the jury for clarification of its answers.

██ A Court is required to harmonize the answers on a special verdict, if possible under a fair reading of them, *Gallick v. Baltimore and Ohio Railroad Co.*, 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618 (1963); *Ortiz v. Bank of America NTSA*, 852 F.2d 383, 388 (9th Cir.1988), and must search for a reasonable way to read the verdicts as expressing a coherent view of the case. *Toner v. Lederle Laboratories*, 828 F.2d 510, 513 (9th Cir.1987), *cert. denied*, 485 U.S. 942, 108 S.Ct. 1122, 99 L.Ed.2d 282 (1988). If "there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962).

██ If a special verdict is irreconcilably inconsistent, then no judgment can be entered. *Brunner v. Maritime Overseas Corp.*, 779 F.2d 296 (5th Cir.), *cert. denied*, 476 U.S. 1115, 106 S.Ct. 1971, 90 L.Ed.2d 655 (1986). An inconsistent verdict may be resubmitted to the jury, with additional interrogatories, for clarification of the inconsistency. *Dickerson v. Pritchard*, 706 F.2d 256, 259 (8th Cir.1983); *U.S. Industries, Inc. v. Touche Ross & Company*, 854 F.2d 1223, 1240 (10th Cir.1988).

It is defendants' position that the jury's answers can be harmonized by simply excluding two of the questions. While defendants' analysis is quite confusing, they seem to argue that the jury's answers are insufficient to support a § 1983 violation because there is no finding of causation. In addition, defendants contend that the jury's specific finding that the shooting of Anton Ward was justified[1] is controlling over the jury's more general finding that

defendants violated Anton Ward's constitutional rights. Defendants conclude that the jury's remaining answers consistently establish a verdict in their favor on both the wrongful death and § 1983 claims.

██ Defendants are correct that the Special Verdict would be consistent if the Court simply ignored the jury's answers to the first two questions. However, the Court must look to all of the jury's answers in determining whether the verdict is consistent. It cannot simply ignore a jury's findings because it would be convenient to do so. The jury found that defendants caused the death of Anton Ward by violating his constitutional rights and the Court has an obligation to reconcile that finding with the other findings, if possible.

██ Defendants also argue that the jury's answers are inconsistent and the jury should be reconvened for further deliberations. First, defendants argue that the jury's finding that defendants' negligence was not the proximate cause of Anton Ward's death is inconsistent with its finding that defendants' violation of Anton Ward's constitutional rights caused his death. The jury's finding that defendants' negligent acts were not the proximate cause of Anton Ward's death does not translate, however, into a general finding that none of defendants' acts, including reckless conduct, were the cause of Anton Ward's death. *See Miller v. Royal Netherlands Steamship Co.*, 508 F.2d 1103 (5th Cir.1975); *Malm v. United States Lines Co.*, 269 F.Supp. 731 (S.D.N.Y.), *aff'd*, 378 F.2d 941 (2nd Cir.1967) ("Inconsistent jury verdicts upon different counts or claims are not an anomaly in the law, which at times recognizes a jury's right to an idiosyncratic position, provided the challenged verdict is based upon the evidence and the law."). In addition, Instruction No. 35, the sole causation instruction given to the jury, only defined proximate cause. Thus, the jury's finding that defendants' unconstitutional acts were the cause of Anton Ward's death

---

**1.** The jury's specific finding was that the shooting of Anton Ward was either unintentional or justified. Defendants concede that the shooting was intentional and, therefore, submit that the jury must have found the shooting was justified.

was a finding of proximate causation. Accordingly, the jury's finding of no proximate cause in relation to the defendants' negligent conduct does not make the Special Verdict inconsistent.

Defendants also argue that a justified shooting is inconsistent with a finding that defendants violated Anton Ward's constitutional rights. While the jury's findings of a constitutional violation and a justified shooting would be inconsistent if this case only dealt with the use of excessive force in violation of the Fourth Amendment, *See Graham v. Connor*, —— U.S. ——, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the jury was presented with evidence, and was instructed,[2] on the requirements of both the Fourth and Fourteenth Amendments. Plaintiffs' Fourteenth Amendment claim is unaffected by a finding that the shooting was justified and the jury is presumed to have found in favor of plaintiffs on this claim. Thus, the jury's answers can be reconciled on this basis.

Furthermore, the jury's finding of no liability under California's wrongful death statute is consistent with its finding of liability under § 1983. The jury was instructed that three types of conduct (grossly negligent, reckless, and intentional) can lead to liability under 42 U.S.C. § 1983. In contrast, the jury was presented with a verdict form addressing only two types of conduct (negligent and intentional) in relation to plaintiffs' wrongful death claims. Thus, the apparent anomaly between the jury's findings of § 1983 liability and no liability under California's wrongful death statute can be reconciled on the basis of a finding of reckless conduct.

While the jury made specific findings that the officers' act of shooting Anton Ward was either unintentional or justified and that the defendants' negligent acts were not the proximate cause of Anton Ward's death, the jury made no specific finding as to reckless conduct by defendants. Implicit within the jury's answer,

then, is a finding of reckless conduct by defendants.

█ It is not inconsistent for the jury to have found that the defendants' reckless conduct was not also negligent conduct. Negligent and reckless conduct are wholly different kinds of conduct and mutually exclusive. *Lynch v. Birdwell*, 44 Cal.2d 839, 848, 285 P.2d 919 (1955); *Lambreton v. Industrial Accident Commission*, 46 Cal.2d 498, 503, 297 P.2d 9 (1956). "The difference between reckless misconduct and conduct involving only such a quantum of risk as is necessary to make it negligent is a difference in the degree of risk, but this difference of degree is so marked as to amount substantially to a difference in kind." Restatement (Second) of Torts, § 500, comment g (1965). The Court can and must find that this is the very distinction made by the jury here.

In conclusion, the Court must infer from the Special Verdict that the jury's answers to questions 1 and 2 are tantamount to a finding that defendants' reckless conduct in violation of the Fourteenth Amendment was the proximate cause of Anton Ward's death. Pursuant to the jury's Special Verdict, defendants are entitled to judgment on plaintiffs' wrongful death claim and plaintiffs are entitled to judgment on their § 1983 claim.

## B. MOTIONS FOR JUDGMENT NOTWITHSTANDING THE VERDICT

Rule 50(b) of the Federal Rules of Civil Procedure provides, in relevant part, as follows:

> Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with the party's motion for a directed verdict ... the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment

---

**2.** "The consistency of the jury verdicts must be considered in light of the judge's instructions to

the jury." *Toner,* 828 F.2d at 512.

as if the requested verdict had been directed.

Defendants move for a J.N.O.V. on various grounds, both legal and factual. The Court will address defendants' legal arguments first, and then review defendants' factual attacks on the jury's verdict. Finally, the Court will discuss plaintiffs' motions for a J.N.O.V. on their wrongful death claims.

### 1. *Defendants' Motion For A J.N.O.V. On Legal Grounds*

Defendants have made two related legal arguments why judgment should be entered in their favor, despite the jury's verdict in favor of plaintiffs. First, defendants argue that the Fourteenth Amendment is not applicable to this case and, since the jury found in favor of defendants on plaintiffs' Fourth Amendment claim, judgment should be entered in their favor. Alternatively, assuming arguendo that the Fourteenth Amendment protects citizens from being placed in dangerous situations under the present state of constitutional law, no such right was clearly established on November 1, 1986 when the defendants shot and killed Anton Ward.

### a. The Fourteenth Amendment Right Not To Be Placed In Danger By Police Officers

■ It is defendants' position that an excessive force claim under the Fourth Amendment is the only theory of recovery where, as here, the end result is a shooting by a police officer. What defendants have failed to consider is that plaintiffs' case is not based solely on a claim of excessive force. While an excessive force claim is reviewable only under the Fourth Amendment, *Graham v. Connor*, 109 S.Ct. 1865 (1989), plaintiffs have also brought a Fourteenth Amendment claim. They have alleged that the officers created the dangerous situation Anton Ward found himself in shortly before he was shot. Unlike *Graham*, and the cases referred to in *Graham*, however, this case does not arise in the context of an arrest or investigatory stop of a free citizen. Plaintiffs' claim that the officers' conduct leading up to the shoot-

ing, as described in Instruction No. 24, not just the shooting, violated Anton Ward's constitutional rights. Thus, plaintiffs were not restricted to bringing a claim under the Fourth Amendment.

Defendants also argue that a Fourteenth Amendment claim can not be brought against them because police officers can not be liable for creating dangerous situations. In support of this position defendants cite *Graham, supra, Sherrod v. Berry*, 856 F.2d 802, 805 (7th Cir.1988) (en banc), and *York v. City of San Pablo*, 626 F.Supp. 34 (N.D.Cal.1985). However, these cases only dealt with excessive force claims and did not address the issue of a police officer's liability for creating a dangerous situation.

Defendants also cite to *DeShaney v. Winnebago Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). Their reliance on *DeShaney*, however, is misplaced. *DeShaney* involved a situation where a government employee failed to intervene to protect a person from a known risk of danger by a third-party, or "private violence". As defendants point out, the *DeShaney* Court stated that due process guarantees do not arise "... from the state's knowledge of the individual's predicament or from its expressions of intent to help him, but *from the limitation which it had imposed on his freedom to act on his own behalf.*" *Id.* 489 U.S. ——, 109 S.Ct. at 1006, 103 L.Ed.2d at 262 (emphasis added). In contrast, this case involves a limitation on Anton Ward's freedom to act on his own behalf, i.e., inspect his own backyard, created by the defendant police officers and their failure to protect him against the danger they created. Accordingly, *DeShaney* actually supports plaintiffs' Fourteenth Amendment theory.

Many courts have established a person's right to be free from being placed in a dangerous situation by a police officer or other government employee. In *Wood v. Ostrander*, 879 F.2d 583 (9th Cir.1989), the court denied the defendant police officer's motion for summary judgment, stating that there was a triable issue of fact as to whether the officer's conduct "affirmative-

ly placed the plaintiff in a position of danger." *Id.* at 589; *see also, Ketchum v. Alameda County,* 811 F.2d 1243, 1247 (9th Cir.1987); *Bowers v. DeVito,* 686 F.2d 616, 618 (7th Cir.1982) ("If the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snakepit."); and *White v. Rochford,* 592 F.2d 381, 384 (7th Cir.1979).

### b. Qualified Immunity

Defendants also argue that judgment should be entered in their favor because they are entitled to qualified immunity as a matter of law. They contend that the right not to be placed in danger by a government employee was not clearly established in November 1986. The Court considers defendants' challenge to the jury's verdict on this ground as an untimely motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure.[3] However, since defendants claim that they failed to argue immunity earlier because of plaintiffs' eleventh hour clarification of their theories of liability, the Court will address this issue on the merits.

■ The Courts have created the rule of qualified immunity to insure "public officials' effective performance of their duties" by making it possible for them reasonably to anticipate when their conduct may give rise to liability for damages. *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Police officers are shielded from liability under 42 U.S.C. § 1983 if the right they are alleged to have violated was not clearly established at the time of the incident. *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Brady v. Gebbie,* 859 F.2d 1543, 1555 (9th Cir.1988). The contours of the right alleged to have been violated "must be sufficiently clear that a reasonable official would understand that what he is doing

violates that right." *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039; *Brady,* 859 F.2d at 1556. While allegations of abstract rights are insufficient to counter a right to qualified immunity, the very action in question need not have been previously held unlawful. *Anderson,* 107 S.Ct. at 3039.

■ The determination of what the "clearly established" law was at the time of defendants' actions is a question for the court; the jury considers only the issue of whether the defendants' conduct was reasonable in light of the law. *Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 2816 (1985); *Brady,* 859 F.2d at 1556 (9th Cir.1988). To resolve this question, the Court must "survey the legal landscape" as it existed in November 1986 to determine what law had been clearly established at the time that defendants' conduct violated Anton Ward's liberty interests under the constitution. *See Wood,* 879 F.2d at 591, *citing Ward v. County of San Diego,* 791 F.2d 1329, 1332 (9th Cir.1986), *cert. denied,* 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987).

■ Plaintiffs' Fourteenth Amendment claim is premised on the theory that "when the state has itself put a person in danger, state officers may be under a duty to act to protect the individual." Defendants argue that qualified immunity is required because: 1) plaintiffs' theory does not reach the level of specificity required by *Anderson,* 483 U.S. 635, 107 S.Ct. 3034; and 2) none of the cases decided in November 1986 dealt with the specific fact situation in this case. However, the exact situation need not be the subject of a prior case for the right to have been established. The questions the Court must decide is whether the cases expressing the right are meaningfully distinguishable from the instant case, whether any other cases had rejected a similar § 1983 claim, and whether there was a wide diversity of cases which had considered such claims and arrived at differing results. *Wood,* 879 F.2d at 591–93.

---

**3.** The Court rejects defendants' argument that denying the existence of plaintiffs' Fourteenth Amendment claims is the same as asserting an affirmative defense of immunity.

The answer to each of these questions is no.

In support of their Fourteenth Amendment claim, plaintiffs rely on *Wood v. Ostrander,* 879 F.2d 583 (9th Cir.1989) and the Seventh Circuit decision adopted by *Wood, White v. Rochford,* 592 F.2d 381 (7th Cir.1979). In *Wood,* the court noted that in 1984 there was no binding precedent in the Ninth Circuit addressing the issue of whether abandoning a person on a public road in a dangerous location subjected a police officer to liability under § 1983. 879 F.2d at 593. However, the court found the United States Court of Appeals for the Seventh Circuit decision, *White v. Rochford,* 592 F.2d 381 (7th Cir.1979), to be relevant authority, binding upon the officer's actions, and sufficient to constitute a basis for a clearly established right as of September 1984.

In *White,* the officer had left three children alone in an abandoned car on the side of a highway in inclement weather after taking their uncle to jail. The court held that the officers "could not avoid knowing that, absent their assistance, the three children would be subject to exposure to cold weather and danger from traffic. *This indifference in the face of known dangers certainly must constitute gross negligence."* 592 F.2d at 385 (emphasis in original).

Based upon the prior precedent set by *White,* the court in *Wood* rejected the defendant's qualified immunity defense. The court found that the "legal landscape" as it existed in September 1984 included a clearly established liberty interest under the constitution to be protected from a danger created by a government official. Furthermore, *White* was not alone in this view. *See e.g., Bowers v. DeVito,* 686 F.2d 616 (7th Cir.1982); *Fox v. Custis,* 712 F.2d 84 (4th Cir.1983); *Walker v. Rowe,* 791 F.2d

507 (7th Cir.1986), *cert. denied,* 479 U.S. 994, 107 S.Ct. 597, 93 L.Ed.2d 597 (1986); and *Escamilla v. City of Santa Ana,* 796 F.2d 266, 269 (9th Cir.1986).

While *Wood* [4] was more closely related to *White* [5] than the case at bar, the teachings of *White* are equally applicable to this case. A case need not be as factually related as *Wood* was to *White* for it to constitute binding precedent of which the officers should reasonably have been aware at the time they placed Anton Ward in a position of danger.

*White* had clearly established that police officers acting in the regular course of their duties could not, as a result of affirmative actions, place a person in danger and then fail to take any action to alleviate that danger. In *White,* a traffic officer abandoned innocent bystanders in a dangerous location on a public road and refused to assist in anyway. In this case, police officers, conducting a drug raid in a dangerous neighborhood, placed innocent third parties in the middle of their operation and refused to identify themselves or explain their presence. The common theme is the responsibility of officers to protect citizens placed in dangerous situations created by the officers, even if the danger was created as a result of a routine duty. The right to such protection was clearly established in November 1986 when officers Renteria, Rodrigues and Vasquez created the situation that led to the shooting death of Anton Ward by these same officers.

Defendants attempt to distinguish *White* by characterizing it as a case in which a police officer created a situation in which individuals became dependent upon the police officer by imposing a limitation on the individuals' freedom to act on their own behalf. However, defendants might as well be describing the case at bar.

---

4. In *Wood,* a state trooper pulled a car to the side of the road at 2:30 a.m. The driver was intoxicated and was arrested. The trooper then took the keys from the car, ostensibly impounding it. The plaintiff, Wood, was a passenger in the car. She was made to leave the car and was left on the side of the road, alone, in a high crime neighborhood. She then accepted a ride home from a stranger, who subsequently raped

her. The police officer's disregard for Wood's safety amounted to deliberate indifference and was sufficient to impose § 1983 liability.

5. The *Wood* court held that it defied common sense to find a meaningful legal distinction between the two cases. 879 F.2d at 593.

Here, the defendant police officers' actions during the early stages of their drug raid created a situation in which Anton Ward became dependent upon them for his safety. These officers created a dangerous situation by traversing across and around private property, at night, in a dangerous neighborhood, without notifying the adjoining property owners. Then rather than explaining the situation to Anton Ward when he went to investigate, the officers confronted Mr. Ward with their weapons drawn. This act of the officers' indicates just how dangerous the neighborhood was. Thus, defendants limited Anton Ward's freedom to act on his own behalf by eliminating his ability to investigate the unusual activity going on around his house and backyard without being in danger of being shot. Under such circumstances, the defendant officers should have taken measures to protect Anton Ward from this danger by, at the very least, informing him of their activities.

Defendants further attempt to distinguish *White* on the factual basis that the *White* plaintiffs were abandoned under perilous circumstances. This is not a sufficient difference to ignore *White* as relevant precedent. In *White*, the officers abandoned the plaintiffs. In this case, they failed to inform the neighbors of their operation and then shot one of the individuals they placed in danger. The crucial fact is not abandonment. The crucial fact is the creation of perilous circumstances and the evidence presented at trial was sufficient to establish the existence of a perilous situation created by defendants on the night Anton Ward was shot and killed.

Finally, defendants contend that there was relevant authority at the time of the shooting of Anton Ward that established that there was no Fourteenth Amendment violation in a situation such as existed at Anton Ward's house on November 1, 1986. Defendants cite *Young v. City of Killeen*, 775 F.2d 1349, 1352–53 (5th Cir.1985) as such authority. While defendants claim that *Young* stands for the proposition that setting in motion a chain of events is not sufficient to create § 1983 liability, *Young* simply holds that negligent conduct during

a stop that lead to a shooting cannot form the basis for liability under § 1983. *Young* involved an improper "seizure" under the Fourth Amendment, already discussed above, and was not relevant authority on the issue of whether an officer would be liable under the Fourteenth Amendment for placing an innocent bystander in danger on November 1, 1986.

Defendants also argue that there was no clearly established right absent a special relationship between the police officers and Anton Ward. In support of their view, defendants cite *Escamilla v. City of Santa Ana*, 796 F.2d 266 (9th Cir.1986). This argument is similar to the one made in relation to *DeShaney, supra*, and defendants' reliance on *Escamilla* is similarly misplaced. In addition to not establishing the existence of a "custodial or other special relationship", the plaintiff in *Escamilla* had not demonstrated that "the state created or even contributed to the risk of harm." Thus, the court in *Escamilla* held that, absent "some special relationship to the victim, government officials generally are not liable under Section 1983 for their failure to protect citizens from dangerous situations *which state officials neither created or exacerbated.*" *Id.* at 270 (emphasis added). Since the deceased in *Escamilla* was not limited by the state, the Fourteenth Amendment did not come into play.

In the case at bar, Anton Ward's ability to walk through his own backyard and investigate the activities of unidentified strangers just outside his yard was limited by the actions of state officials, the defendant police officers. Thus, it is not a case in which a special relationship is required because the officers created and/or exacerbated the dangerous situation.

■ For the foregoing reasons, the Court holds that the Fourteenth Amendment is violated where police officers create a dangerous situation leading to a confrontation resulting in death and that the right to be protected from such a situation was clearly established at the time defendants shot and killed Anton Ward.

### 2. *Defendants' Factual Attacks On The Jury's Verdict*

"J. n.o.v. is proper if the evidence construed in the light most favorable to the non-moving party permits only one reasonable conclusion as to the verdict and that conclusion is contrary to the jury's; it is improper if reasonable minds could differ over the verdict." *Fleming v. Dept. of Public Safety*, 837 F.2d 401, 408 (9th Cir.), *cert. denied*, 488 U.S. 889, 109 S.Ct. 222, 102 L.Ed.2d 212 (1988).

■■■ Defendants contend that plaintiffs failed to prove their Fourth Amendment claim, which requires a showing that the police officers were not justified in their use of deadly force. *York v. City of San Pablo*, 626 F.Supp. 34, 35 (N.D.Cal.1985). Defendants correctly point out that the jury's finding that the shooting of Anton Ward was justified warrants the entry of judgment in their favor on plaintiffs' Fourth Amendment claim.[6] However, this finding by the jury is irrelevant to plaintiffs' Fourteenth Amendment claim. While the acts causing a Fourth Amendment seizure may lead to the denial of a liberty interest protected by the Fourteenth Amendment, there are numerous situations which implicate one of these provisions, but not the other. These provisions often involve different circumstances and have quite different standards applied to them. Thus, the granting of judgment in favor of defendants on plaintiffs' Fourth Amendment claim is within the contours of the jury's verdict and irrelevant to this motion for a J.N.O.V.

■■■ Defendants also move for a J.N.O.V. on the ground that, assuming one exists, plaintiffs failed to prove their Fourteenth Amendment claim. As discussed above, the ground for relief upon which the jury must have based its finding of § 1983 liability is a reckless disregard for the safety of Anton Ward. While defendants have completely failed to discuss the evidence before the Court, the Court finds that there was no factual basis for the jury's finding of liability on the part of Chief McNamara. The evidence presented against Chief McNamara and the City of San Jose dealt with the Police Department's failure to conduct independent investigations of officer shootings and to supervise one of the officer defendants. While such actions could constitute gross negligence, they do not rise to the level of reckless disregard and do not warrant the finding of liability made by the jury. Accordingly, the Court HEREBY GRANTS defendants' motion for a J.N.O.V. as to defendant McNamara.

■■■ On the other hand, the evidence is sufficient to support a finding of reckless disregard on the part of defendants Vasquez, Rodrigues and Renteria. The jury could have concluded that Anton Ward's death was caused by the defendants' reckless conduct leading up to the shooting, including planning the operation in a parking lot without notifying a supervisor, conducting a drug raid on a dark night in a neighborhood known to be dangerous, notifying only some of the neighbors that were being placed in the middle of the operation, failing to identify themselves to the person or persons from the Ward residence when they had the opportunity to do so in the front or side yards, climbing on and about fences adjacent to the Ward's backyard, failing to remain concealed, and deciding to confront Anton Ward while he was in his backyard. In other words, the jury may have concluded that the officers set in motion a chain of events that led to the gunpoint confrontation, during which the shooting of Anton Ward became necessary and was justified. Plaintiff's allegations referred to in Instruction No. 24, if true, are sufficient for a finding that defendants

---

**6.** Defendants also argue that Anton Ward's movement was not restricted prior to his being shot and, therefore, the shooting was the only "seizure" that could be at issue in this case. Whether Anton Ward was "seized" within the meaning of the Fourth Amendment as a result of defendants' pre-shooting activity, including ordering all members of Anton Ward's household to remain inside, was not an issue raised at trial. The issue before the Court was not whether Anton Ward was "free to walk away from the police officers" before they opened fire upon him, but rather whether he was free to walk where he had a right to be, his own backyard, without being in a dangerous situation created by these officers.

acted recklessly in violation of 42 U.S.C. § 1983. Since there was ample evidence presented at trial to support a finding that plaintiff's allegations are in fact true, defendants are not entitled to judgment notwithstanding the jury's verdict.

Additionally, defendants move for a J.N.O.V. on the ground that the only conclusion from the evidence presented was that they could have reasonably believed their actions were lawful in light of the clearly established law at the time and, therefore, are entitled to qualified immunity.

Immunity attaches when the official's actions could reasonably have been thought consistent with the rights they are alleged to have violated. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). Defendants contend that the evidence presented to the jury proved that their actions were reasonable in light of the information they possessed and the clearly established law. However, they fail to go beyond this mere conclusion and explain how the evidence weighed so heavily in their favor that no other decision was warranted. The question of whether defendants' actions were reasonable in light of the law was presented to the jury and the jury's verdict includes an implicit rejection of defendants' immunity defense. The evidence presented to the jury[7] was not such that the Court can say that the jury's finding was in error.

### 3. *Plaintiffs' Motion For A J.N.O.V. On Their Wrongful Death Claim*

■■■ Plaintiffs move for a J.N.O.V. on their wrongful death claims. They argue that a finding of liability under § 1983 is equivalent to a finding of liability under the wrongful death statute because the same acts form the basis for liability under both laws.[8] However, the jury was not presented with a recklessness theory of recovery

under the wrongful death statute. Where a party fails to request a particular issue be submitted to the jury, the party "will be held to have waived jury trial on that issue." Wright and Miller, Federal Practice and Procedure: Civil § 2507; *Smith–Blair, Inc. v. R.H. Baker & Co.*, 232 F.Supp. 484 (S.D.Cal.1962), aff'd on appeal, 331 F.2d 506 (9th Cir.1964). When an issue has not been presented to the jury, the Court may make its own findings pursuant to Rule 49(a) of the Federal Rules of Civil Procedure or consider the issue to have been withdrawn.

■■■ Plaintiffs failed to properly present the issue of whether there was reckless conduct that would subject defendants to liability for the wrongful death of Anton Ward by excluding it from the special verdict form. The Court considers plaintiffs to have withdrawn this issue and declines to make its own findings on it. Plaintiffs' motions are denied.

### C. MOTIONS FOR A NEW TRIAL

■■■ Defendants contend that the Court made various errors during the trial of this case and move for a new trial. Rule 59(a) of the Federal Rules of Civil Procedure provides, in relevant part, as follows:

> A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States; ...

"Rule 59 gives the trial judge the power to prevent what she considers to be a miscarriage of justice." *Corder v. Gates*, 688 F.Supp. 1418, 1424 (C.D.Cal.1988), *citing Moist Cold Refrigerator Co. v. Lou Johnson Co.*, 249 F.2d 246 (9th Cir.1957), *cert.*

---

**7.** Before the jury was evidence that: 1) drug enforcement actions are dangerous; 2) the defendant officers *did not warn the Ward household of their activities*; 3) the officers did not identify themselves in the front and side yards; and 4) the officers confronted Anton Ward in the backyard. In addition, the jury was presented with expert opinions that no reasonable officer could believe that the defendant officers' conduct was lawful.

**8.** Section 377 of the California Code of Civil Procedure provides for liability for wrongful death "when the death of a person is caused by the wrongful act or neglect of another." This provision captures wrongful conduct ranging from negligence, through recklessness, to intentional tort. *Ewing v. Cloverleaf Bowl*, 20 Cal.3d 389, 143 Cal.Rptr. 13, 572 P.2d 1155 (1978).

*denied,* 356 U.S. 968, 78 S.Ct. 1008, 2 L.Ed.2d 1074 (1958). A new trial may be ordered to correct manifest errors of law or fact, but "[t]he burden of showing harmful error rests on the party seeking the new trial." *Corder,* 688 F.Supp. at 1424; *accord Malhiot v. Southern California Retail Clerks Union,* 735 F.2d 1133 (9th Cir.1984), *cert. denied,* 469 U.S. 1189, 105 S.Ct. 959, 83 L.Ed.2d 965 (1985). Furthermore, "[a] new trial may not be granted on grounds not called to the court's attention during the trial unless the error was so fundamental that gross injustice would result." *Id.*

■ Defendant's primary concern is with the jury instructions and verdict form presented to the jury prior to deliberation. Defendants argue that the Court erroneously presented the case to the jury without requiring a determination of proximate cause on plaintiffs' civil rights claims. The Court finds that defendants waived their right to make this objection by rejecting plaintiff's proposed special verdict form, which included questions on the issue of proximate cause, in favor of the one used and by submitting their own proposed verdict form leaving out any mention of proximate cause.

Furthermore, defendants are incorrect when they claim that the proximate cause issue was never presented to the jury. When reviewing jury instructions, the Court must consider the charge as a whole to determine whether the instructions fairly and adequately covered the issues presented, correctly stated the law and were not misleading. *Thorsted v. Kelly,* 858 F.2d 571, 573 (9th Cir.1988), *citing Coursen v. A.H. Robins Co.,* 764 F.2d 1329, 1337 (9th Cir.), *modified,* 773 F.2d 1049 (9th Cir.1985).

In the case at bar, the jury verdict required the jurors to decide whether defendants caused Anton Ward's death by depriving him of his constitutional rights. Instruction No. 19 informed the jury that defendants were liable under 42 U.S.C. § 1983 if they subjected, or caused to be subjected, any citizen to the deprivation of his constitutional rights. Instruction No. 28 informed the jury that they were to decide whether Chief McNamara's conduct was "the proximate cause of the alleged constitutional violations." These instructions are to be considered in light of the only instruction presented to the jury defining causation, Instruction No. 35, which was an instruction on proximate cause. In light of these instructions, the jury could only have come to the conclusion that the violation of Anton Ward's constitutional rights by the defendant officers was the proximate cause of his death.

■ As an alternative grounds for denying defendants' motion, the Court notes that a finding of proximate cause is not necessary in all cases involving the violation of 42 U.S.C. § 1983. Proximate cause is a requirement for § 1983 liability only under some circumstances and theories of liability. It is not required where, as in this case, intentional or reckless conduct forms the basis for liability.

■ For defendants to be liable under 42 U.S.C. § 1983, there must be proof of an "affirmative link" between the constitutional violation and the injury sustained, in this case the death of Anton Ward. *See City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Davis v. City of Ellensburg,* 869 F.2d 1230, 1233–35 (9th Cir.1989). While defendants recharacterize the "affirmative link" requirement as one requiring a finding of proximate cause, there is no authority for their position. The civil rights laws are to be read "against the background of tort liability that makes a man responsible for the natural consequences of his actions." *Monroe v. Pape,* 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961), *overruled on other grounds, Monell v. Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Principles of causation found within the common law apply to the determination of § 1983 liability. *DeShaney v. Winnebago Social Services,* 812 F.2d 298, 302 (7th Cir.1987), *aff'd on other grounds,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). Proximate cause is a requirement for a finding of negligence, but is not required in the field of intended

torts, which rules apply to recklessness as well. *See* Restatement (Second) of Torts, § 501, comment a (1975); *Olea v. Southern Pacific Co.*, 272 Cal.App.2d 261, 266, 77 Cal.Rptr. 332 (1969).

Defendants rely upon *Arnold v. International Business Machines*, 637 F.2d 1350, 1355 (9th Cir.1981) and *Brower v. County of Inyo*, 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989), as the basis for their opinion that a constitutional violation must be a "proximate cause" of the damages sustained by plaintiffs.

*Arnold*, 637 F.2d 1350 (9th Cir.1981), however, supports the view that proximate cause is an issue in only some cases and lends no support to defendants' argument. As *Arnold* pointed out, in some cases the determination of state action and proximate cause will be quite similar. *Id.* at 1355–56. The Supreme Court, in *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), employed elements of proximate cause analysis in determining state action where state officials were being sued for the actions of third parties. *Arnold*, in contrast, involved the unique situation where a private party was being sued for the actions of government employees, the search and arrest of the plaintiff by police officers. Determining liability under § 1983 under such circumstances requires a finding of proximate cause because the private parties were not direct participants in the infringing conduct (i.e., they did not arrest or search the plaintiff themselves). When, however, there is no question of state action, the defendants having been government employees, and the defendants themselves performed the conduct at issue, the jury need only decide whether the defendants' conduct violated a constitutional right and caused injury. Proximate cause is no longer an issue.

Defendants' reliance on *Brower v. County of Inyo, supra*, is likewise misplaced. Defendants make the same mistake they boisterously chastise plaintiffs for; they rely on nothing more than *dicta*. Proximate cause was not an issue in *Brower* and Justice Scalia's use of the term proximate cause was nothing more than a general reference to extraneous issues the trial court might have to address on plaintiffs' *Fourth Amendment* claims. 109 S.Ct. at 1382–83. Furthermore, *Brower* cited *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 as support for this general reference. As discussed above, and explained in *Arnold*, 637 F.2d at 1356, *Martinez* was a case in which there was no need to address the issue of proximate cause. The Court merely discussed proximate causation principles within its state action analysis. State action was not disputed in this case. Accordingly, *Brower* lends no weight to defendants' assertion that the jury was required to make a finding of proximate cause in the case at bar.

Finally, plaintiff Delissa Ann Ward moves for a new trial. The jury found against Delissa Ann Ward during the first phase of this trial. Judgment was entered against her on June 30, 1989. Her motion for new trial was not filed until July 31, 1989, far beyond the 10 day limit set forth in Rule 59(b) of the Federal Rules of Civil Procedure. Accordingly, the Court HEREBY DENIES the motion as having been made untimely. In addition, the Court holds that the finding by the jury that Delissa Ann Ward did not entertain a good faith belief in the validity of her marriage was not clearly against the weight of the evidence.

## D. MOTION TO ALTER THE JUDGMENT

Plaintiff Sabrina Prior moves under Rule 59(e) of the Federal Rules of Civil Procedure to reopen the judgment to allow her to amend the complaint to state a § 1983 claim in addition to her wrongful death claim. Plaintiff argues that she should be allowed to bring a civil rights action against defendants as a child of the decedent, Anton Ward. *See Smith v. City of Fontana*, 818 F.2d 1411 (9th Cir.), *cert. denied*, 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987). However, plaintiff is not a child of Anton Ward and only had the right to bring a wrongful death claim. Therefore, there is no reason for plaintiff to amend her complaint and her Rule 59(e) motion is HEREBY DENIED.

### III. CONCLUSION

For the foregoing reasons, the Court HEREBY GRANTS defendants' motion for judgment notwithstanding the verdict as to defendants the City of San Jose and its Chief of Police, Joseph McNamara. All other motions brought by defendants are HEREBY DENIED. Plaintiffs' motions for J.N.O.V. and a new trial are also HEREBY DENIED. The judgment in this case, entered on July 19, 1989, in favor of plaintiffs John Ward, Helen Ward and the Estate of Anton Ward and against defendants Renteria, Rodrigues, Vasquez is HEREBY AFFIRMED.

IT IS SO ORDERED.