**Ellen BYRD and Vivien Harkness, Plaintiffs–Appellants,**

**v.**

**James GUESS, Ronald Bates, Anthony Selvaggi, Alice Jemta, Charles Sylvia, Robert Wahlstrom, Robert Dunek, Los Alamitos City, Mark Vanholt, Defendants–Appellees.**

No. 96–55532.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 7, 1997.

Decided March 3, 1998.

Stephen Yagman and Marion R. Yagman, Yagman & Yagman, Venice, California, for appellants.

Bruce D. Praet, Ferguson, Praet & Sherman, Santa Ana, California, for appellees.

Before: HALL, T.G. NELSON, Circuit Judges, and WINMILL, District Judge.*

WINMILL, District Judge:

## INTRODUCTION

Sylvan Byrd was shot to death by two police officers. Byrd's wife, Ellen Byrd, and his mother, Vivien Harkness, brought this § 1983 action against the officers, among others. A jury trial was held, and after both sides rested, the district court declared a mistrial and invited the defendants to file a motion for summary judgment. The defendants filed the motion which the district court granted. Ellen Byrd and Vivien Harkness appealed. We affirm.

## FACTS

On January 23, 1993, Sylvan Byrd and his wife Ellen were arguing in their apartment in Los Alamitos, California. The neighbors called 911 to report a domestic disturbance, and police officers Vic Cantu and Mark Van-Holt responded.

Officer Cantu arrived first. Listening through a closed door, he heard a woman sobbing and a man saying "I don't want to hurt you again." When Officer VanHolt arrived, Officer Cantu knocked on the door and covered the door's peephole with his hand. In response to the knocking, Sylvan grabbed a handgun while Ellen retreated to the kitchen where she could view the front door. Ellen testified that Sylvan opened the door with his left hand, holding the gun in his right hand behind his right thigh and pointed at the floor.

Ellen testified that Sylvan opened the door just 8 to 10 inches and bent his neck to look out. Within four seconds, according to Ellen, the officers pushed the door open and simul-taneously fired their guns through the door, striking and killing Sylvan. Ellen testified that Sylvan never raised his gun from its position behind his right thigh, and never exchanged any words with the officers. It is undisputed that Sylvan's gun was loaded and that he had not fired any rounds.

The officers recall the events differently. Officer Cantu testified that Sylvan opened the door about 18 inches, not 8 to 10 inches as Ellen testified. Officer Cantu commanded Sylvan to "let me see your hand." Officer Cantu repeated this demand three or four times but got no response. Then, as the door started to close, Officer Cantu saw Sylvan raise his gun up through the slit between the door and the door jamb, and point it at Officer VanHolt. Officer Cantu then kicked the door in and started firing through the door in the location where he felt Sylvan was standing. Officer VanHolt also started firing. Sylvan died shortly thereafter from his bullet wounds.

## LITIGATION HISTORY

Ellen Byrd and her mother Vivien Harkness (collectively referred to as the "Byrds") filed this § 1983 action to recover damages for Sylvan's death against (1) the city of Los Alamitos; (2) officers Cantu and VanHolt (the "Officers"); and (3) seven other individuals identified as "policymakers" with the city police. The complaint contained a claim under § 1983 for the violation of Sylvan's Fourth Amendment rights, and a wrongful death claim under California law.

Although the complaint notes that Ellen Byrd was Sylvan's wife, and that Vivien Harkness was Sylvan's mother, there was no allegation in the heading of the complaint or in its body that plaintiffs were suing in a representative capacity as Sylvan's successors in interest or as personal representatives of Sylvan's estate. The Officers challenged this in their Answer by stating in their twenty-seventh affirmative defense that "[p]laintiffs have no standing to bring this action as the heirs to decedent."

The parties held a pretrial conference on April 25, 1994. At this time, the only re-

*The Honorable B. Lynn Winmill, District Judge for the District of Idaho, sitting by designation.

maining defendants were the City and the Officers. The district court gave the parties thirty days to file summary judgment motions; bifurcated the *Monell* issues;[1] set a trial date for January 25, 1995; and entered a pretrial order. That order contained no indication that the Byrds were suing in a representative capacity or were pursuing their state wrongful death claim.

The discovery deadline had passed, and the Byrds complained that discovery should be reopened on the *Monell* issues. This was an oral request; no written Rule 56(f) motion was filed at this time. The district court denied the request. There was no discussion of the Byrds' failure to make any allegations in their complaint that they were suing in a representative capacity.

The City moved for summary judgment under *Monell* on the ground that there was no evidence that its police department had any custom or policy of using excessive force. In response, the Byrds filed a written motion under Rule 56(f) to do more discovery.

The district court granted the City's motion for summary judgment in a short order that contained no explanation. The district court did not specifically rule on the Byrds' Rule 56(f) request. The Officers were now the only defendants.

The case went to trial on September 29, 1995, before a jury. After five days of trial, both sides rested. During a jury instruction conference with counsel, the district court raised its concern that the Byrds did not sue in their representative capacity and thus had no standing to assert Sylvan Byrd's Fourth Amendment rights. The Byrds argued that they were in fact the successors in interest under California law, even though they had not alleged that in the complaint. The Byrds also asserted that Ninth Circuit case law

gave them an independent cause of action under the Fourteenth Amendment to sue in their individual capacities for their own damages including loss of society and companionship.

The district court declared a mistrial, concluding that the Byrds could not recover for the violation of Sylvan's Fourth Amendment rights because the Byrds had failed to sue in their representative capacity. The district court then invited the Officers to file a summary judgment motion. The district court recognized that although the Byrds had no Fourth Amendment claim, they might have a Fourteenth Amendment claim for loss of consortium that they could bring in their individual capacities. The district court wanted briefing on that issue.

The district court discharged the jury without submitting any issues to them. The Officers filed a motion for summary judgment.[2] The Byrds responded with a motion to amend their complaint and modify the pretrial order. In the proposed amended complaint, the Byrds inserted a new claim that they were successors in interest to Sylvan and were asserting his Fourth Amendment rights. But the accompanying brief in support of the motion did not mention this new claim. Instead, the brief focused entirely on two other claims the Byrds proposed to add: a wrongful death claim (which was in the complaint but not the pretrial order) and a survival claim under California tort law (which had never been pled to this point).

The district court entered a Judgment granting the Officers' motion for summary judgment, and denying the Byrds' motion to amend their complaint and modify the pretrial order. The Judgment contains no explanation of the rulings. The Byrds appeal from these rulings.

---

1. In *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that a municipality, like the city of Los Alamitos, is subject to suit under § 1983 only if the alleged constitutional deprivation resulted from a city custom or policy.

2. The motion was made on the following grounds: (1) the Byrds did not sue in their representative capacity and hence had no Fourth

Amendment claims; (2) there is no Fourteenth Amendment claim for the loss of an adult-as opposed to a minor-child; (3) even if there is a Fourteenth Amendment claim for the loss of an adult child, the Byrds failed to show that the officers were guilty of "deliberate indifference" to their rights; (4) even if the standard for the Fourteenth Amendment claim is "reasonableness," the officers acted reasonably; and (5) the officers were entitled to good faith immunity.

## ANALYSIS

### 1. Did the District Court err in finding that the Byrds lacked standing to assert the violation of Sylvan Byrd's Fourth Amendment Rights?

The district court did not issue a written opinion explaining its ruling that the Byrds lacked standing to assert the violation of Sylvan Byrd's Fourth Amendment rights. Nevertheless, the transcript of the court proceedings shows that the district court found that the Byrds lacked standing to assert Sylvan's Fourth Amendment rights because they did not sue in their representative capacity. Standing is a question of law reviewed de novo. See Johns v. County of San Diego, 114 F.3d 874, 876 (9th Cir.1997).

It is undisputed that survival actions are permitted under § 1983 if authorized by the applicable state law. See Smith v. City of Fontana, 818 F.2d 1411, 1416 (9th Cir.). It is also undisputed that California law applies to this case, and permits survival actions to be brought by the personal representative of the estate of the deceased or by the deceased's successors in interest. See Cal. Civ.Proc.Code § 377.60 (1996).

The Byrds' complaint does assert that Ellen Byrd is "the spouse of deceased Sylvan Byrd, and Plaintiff Vivien Harkness is the mother of the deceased." But there is no indication in the complaint's heading or body that the Byrds were suing in a representative capacity as successors in interest to Sylvan Byrd or as personal representatives of his estate. The complaint says nothing about the applicable state law on successorship interests, and nothing about whether the state law requirements have been fulfilled.

The pretrial order is likewise silent. In that section of the order where the parties are listed, the plaintiffs' names are listed without any notation of a representative capacity.

The Byrds had the burden of alleging and proving standing. See Northwest Environmental Defense Center v. BPA, 117 F.3d 1520, 1528 (9th Cir.1997). The Byrds failed to allege their representative capacity in their complaint, and failed to introduce any evidence that they were in fact the successors in interest of Sylvan Byrd under California law. The district court properly found that the Byrds lacked standing to assert the violation of Sylvan Byrd's Fourth Amendment rights.

### 2. Did the district court err in denying that portion of the Byrds' motion to amend the complaint and modify the pretrial order that sought to add an allegation that the Byrds were successors in interest to Sylvan Byrd's Fourth Amendment claim?

The Byrds attempted to cure their lack of standing by filing a motion to amend their complaint and to modify the pretrial order. The district court denied the motion without explanation. We review the district court's denial of a motion to modify a pretrial order for abuse of discretion. See Miller v. Safeco Title Ins. Co., 758 F.2d 364, 369 (9th Cir.1985). The district court abuses its discretion by denying a motion to amend without explanation unless the reasons for doing so are apparent from the record. See DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir.1987). In this case, the reasons are apparent from the record, and we can find no abuse of discretion.

"Standing is a necessary element of federal-court jurisdiction." Big Country Foods, Inc. v. Board of Education, 952 F.2d 1173, 1176 (9th Cir.1992). If the complaint's allegations are insufficient to confer standing, "[o]ften a plaintiff will be able to amend its complaint to cure standing deficiencies." United Union of Roofers v. Insurance Corp. of America, 919 F.2d 1398, 1402 (9th Cir. 1990). Fed.R.Civ.P. 15(a) provides that amendment shall be granted "freely when justice so requires." But this standard changes and becomes progressively more difficult to meet as litigation proceeds toward trial. Once the district court enters a scheduling order setting forth a deadline for the amendment of pleadings, modifications are allowed only upon a showing of "good cause." See Fed.R.Civ.P. 16(b); Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 608 (9th Cir.1992). And once a pretrial order has been entered pursuant to Rule 16(e) setting

forth the parties and issues for trial, modifications are allowed "only to prevent manifest injustice." *See* Fed.R.Civ.P. 16(e); *Johnson,* 975 F.2d at 608.

 The district court should consider four factors in determining whether to modify the parties' pretrial order: (1) the degree of prejudice or surprise to the defendants if the order is modified; (2) the ability of the defendants to cure any prejudice; (3) the impact of the modification on the orderly and efficient conduct of the case; and (4) any degree of willfulness or bad faith on the part of the party seeking the modification. *See United States v. First Nat'l Bank of Circle,* 652 F.2d 882, 887 (9th Cir.1981). It is the moving party's burden to show that a review of these factors warrants a conclusion that manifest injustice would result if the pretrial order is not modified. *See R.L. Clark Drilling Contractors, Inc. v. Schramm, Inc.,* 835 F.2d 1306, 1308 (10th Cir.1987).

The Byrds did not carry their burden before the district court. In pretrial proceedings the Byrds never presented any evidence, by affidavit or otherwise, establishing that they were successors in interest to Sylvan Byrd. The Byrds then proceeded through an entire trial without making any argument or introducing any evidence concerning their representational capacity. Not until that trial was over did they submit a proposed amended complaint that contained a single sentence alleging that they were suing as successors in interest. Their accompanying briefing said nothing about whether their Fourth Amendment claim passed the four-part test governing modifications of pretrial orders. Under these circumstances, the district court did not abuse its discretion when it denied the Byrds' motion to modify the pretrial order.

**3. *Did the district court err in denying that portion of the Byrds' motion to modify the pretrial order that sought to set forth more fully the pendant state tort claims?***

 In their motion to modify the pretrial order, the Byrds sought to add state tort claims. The Officers responded that the Byrds had never included any state tort

claims in the pretrial order and had not shown the manifest injustice necessary to modify the order to add those claims. Once again, the district court denied the motion to modify without explanation. Our standard of review is the same as in the preceding section. And once again, we find that the reasons for the district court's decision are apparent from the record, and that the district did not abuse its discretion.

Count Two of the Byrds' complaint contained a wrongful death claim under California law. The Byrds did not include any specific reference to their state tort claim in the pretrial order. But in the section of the order entitled "facts [that] remain to be litigated," the Byrds included a footnote reading as follows: "Plaintiff or Plaintiffs incorporate in this paragraph by this reference all issues raised in the operative complaint and in the Memorandum of Contentions of Fact and Law."

The Byrds' "Memorandum of Contentions of Fact and Law" is a six-page brief concerning the issues to be tried. It contains no mention whatsoever of any state tort claims. The Byrds assert, however, that their complaint asserted state tort claims and was incorporated into the pretrial order by the footnoted reference.

We disagree. The footnote's placement in the section of the pretrial order listing "facts remain[ing] to be litigated" indicates that at most, only the complaint's statement of facts, and not its recitation of legal claims under state tort law, was incorporated by reference. This narrow interpretation of the Byrds' attempt to incorporate the complaint by reference is buttressed by their failure to incorporate the complaint into that section of the pretrial order entitled "issues of law remain[ing] to be litigated."

The Byrds' vague attempt to incorporate claims by reference defeated the goal of Fed. R.Civ.P. 16(c) to specifically identify the issues for trial. *See First National,* 652 F.2d at 886. In *First National,* we held that the pretrial order was designed to "simplify issues and avoid unnecessary proof," and we warned that "[d]isregard of these principles would bring back the days of trial by am-

bush." *Id.* at 886. It would work a manifest injustice on the Officers to allow the Byrds to add tort claims that were not specifically mentioned in the pretrial order and were not addressed in any way during the trial. Under these circumstances, we find that the district court did not abuse its discretion in denying the Byrds' proposed amendment.

### 4. Did the district court err in dismissing the Byrds' Fourteenth Amendment claims?

The Byrds argued to the district court that even if they could not recover under § 1983 for the violation of Sylvan's Fourth Amendment rights, they could recover for the violation of their own rights under the Fourteenth Amendment. The Byrds alleged that their liberty interest in the companionship and society of Sylvan was violated. The Officers responded that the Byrds spent the entire trial arguing that the Officers did not act reasonably, and failed to assert that the Officers acted with deliberate indifference, the applicable standard for the Fourteenth Amendment.

The district court dismissed the case on summary judgment without explanation. But the transcript of argument shows the district court's reasoning. During this oral argument, counsel raised the possibility that the Fourth Amendment claim was governed by a reasonableness standard while the Fourteenth Amendment claim was governed by a deliberate indifference standard. Counsel for the Byrds suggested giving the jury two verdict forms with a different standard on each. The district court responded that "the defendants in my estimation would have been disadvantaged in that they did not start out understanding that they would have to defend on the basis of reckless indifference." *Transcript* at 680, *ll.* 13–16. Byrds' counsel stated "I didn't either." *Id.* at *l.* 17. The district court then added the following: "That may be. Then to instruct the jury about that when neither side clearly had it in focus nor did the Court, then I think that would be imminently unfair." *Id.* at *ll.* 18–20.

It thus appears that the district court dismissed the Fourteenth Amendment claim because (1) the court believed that the claim was governed by a different standard-deliberate indifference-than the Fourth Amendment claim; (2) the Byrds had not pursued the Fourteenth Amendment claim at trial; and (3) it would be unfair to the Officers to insert a claim governed by an entirely different standard from the claim litigated at trial on the eve of closing argument.

This logic holds together so long as the two claims are truly governed by different standards. But if they are governed by the same standard, the Byrds' evidence at trial established both claims, and both should have been submitted to the jury. Thus, the threshold issue is whether the claims are governed by different standards.

■ Section 1983 "contains no state-of-mind requirement independent of that necessary to state a violation of the underlying constitutional right." *Daniels v. Williams,* 474 U.S. 327, 330, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986). The underlying constitutional rights at issue here are the Fourteenth Amendment liberty interests of a mother and wife in the society and companionship of the deceased.

The parties were unable to present any on-point authority to the district court concerning the standard governing the Byrds' Fourteenth Amendment claim for loss of society. After the district court's decision, another district court in this Circuit held that a parent's Fourteenth Amendment claim for the death of her son during an arrest by police was governed by the deliberate indifference standard. *See Smoot v. City of Placentia,* 950 F.Supp. 282, 283 (C.D.Cal.1997). *Smoot* held that the "mother's case is not covered by the 'objective reasonableness' proof standard applied in Section 1983 excessive force cases because her case is not based on that theory." *Id.* (footnote omitted). Instead, her claim was governed, the court held, by the deliberate indifference standard most recently discussed in *Lewis v. Sacramento County,* 98 F.3d 434, 441 (9th Cir.1996), *cert. granted,* —— U.S. ——, 117 S.Ct. 2406, 138 L.Ed.2d 173 (1997). *Id.*

*Lewis* was a case brought by the parents of a boy killed during a high-speed police

pursuit. The parents sued as personal representatives of their son's estate, *Id.* at 434, but did not bring any Fourth Amendment claim. *Id.* at 438 n. 3. Instead, the parents alleged "a deprivation of their son's Fourteenth Amendment due process rights in violation of ... § 1983." *Id.* at 437. The Circuit held that "the appropriate degree of fault to be applied to high-speed police pursuits is deliberate indifference to, or reckless disregard for, a person's right to life and personal security." *Id.* at 441.

*Lewis* did confine its holding to its facts: "We do not here decide whether deliberate indifference or reckless disregard is the minimum standard for all substantive due process violations; we decide only that this standard of conduct is the minimum required to sustain a § 1983 claim in the context of a high-speed police pursuit." *Id.*

Lewis is distinguishable, the Byrds assert, because the parents there did not bring any Fourth Amendment claim. The Byrds assert that even though their loss of society claims arise under the Fourteenth Amendment, the real basis for those claims is the violation of Sylvan's Fourth Amendment rights. Thus, their Fourteenth Amendment claims should be governed by the "objective reasonableness" standard applicable to claims brought under the Fourth Amendment.

This argument has surface appeal: If the police kill a person, why should the claim of the surviving spouse for loss of society be governed by a different standard than the claim of the deceased's estate? The surviving spouse and the estate have both suffered a loss by the killing. It would certainly simplify jury instructions if the claims of the surviving spouse and the estate, often brought in the same action, were both governed by the objective reasonableness standard.

But there is binding and persuasive authority otherwise. The Supreme Court has stated that "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas v. Illinois,* 439 U.S. 128, 133–34, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978) (quoting *Alderman v. United States,* 394 U.S. 165, 174, 89 S.Ct. 961, 966–67, 22 L.Ed.2d 176

(1969)). If the Byrds' argument is adopted, the Byrds would be entitled to damages for loss of society if Sylvan's Fourth Amendment rights were violated. In essence, the Byrds would be vicariously asserting Sylvan's Fourth Amendment rights, in violation of *Rakas's* admonition.

To avoid this dilemma, the Byrds' claim must be governed by a different standard than Sylvan's claim. This holding is consistent with our recognition in *Curnow v. Ridgecrest Police,* 952 F.2d 321 (9th Cir.1991), that a parent's loss of a child's society "raises a different constitutional claim" than the child's direct Fourth Amendment claim. *Id.* at 325.

To prove their Fourteenth Amendment claim, the Byrds had to prove that the Officers acted with deliberate indifference to the Byrds' rights of familial relationship and society by using excessive force against Sylvan Byrd. *See Lewis,* 98 F.3d at 441; *Smoot,* 950 F.Supp. at 283. But at trial, the Byrds proceeded entirely under the Fourth Amendment's objective reasonableness test. The district court correctly reasoned that it would be unfair to submit the Fourteenth Amendment claim to the jury when there had been no evidence on it during trial. We therefore affirm the district court on this issue.

### 5. Did the court err in admitting a computer simulation of the shooting?

The district court granted the Officers' motion in limine to admit a computer animation of the shooting so long as "all facial expressions are removed." The district court then reviewed the tape at trial outside the presence of the jury and admitted it, finding that it complied with his order to remove facial expressions and was not unduly prejudicial.

The Byrds now assert that the tape should not have been admitted because Sylvan is portrayed as "a nutty android... like somebody who is crazed." The tape should have been excluded under Rule 403, the Byrds assert, because its probative value was substantially outweighed by the danger of unfair prejudice.

■ Evidentiary rulings are reviewed for an abuse of discretion, and should not be reversed absent some prejudice. *See Masson v. New Yorker Magazine, Inc.*, 85 F.3d 1394, 1399 (9th Cir.1996). We cannot say that the district court abused its discretion here, and therefore reject the Byrds' challenge to the evidentiary ruling.

### 6. Did the district court err in refusing to reopen discovery on Monell issues?

■ At the pretrial conference, the district court gave the City a period of time to file a motion for summary judgment on the ground that there was no evidence of a policy or custom of excessive force by city police officers, as required by *Monell.* In response, at that same conference, the Byrds made an oral motion to reopen discovery because they expected to obtain evidence that Officer Van-Holt had excessive force claims in the past that were ignored by the City. The district court denied the oral motion on the ground that the Byrds had already had enough time to conduct discovery.

After the city filed its summary judgment motion, the Byrds filed a response and made another request to reopen discovery, this time filing a written request under Rule 56(f). The district court granted the city's summary judgment motion without explanation and did not rule on the written Rule 56(f) request.

■ If a district court fails to address a Rule 56(f) motion before granting summary judgment, the omission is reviewed *de novo. See Qualls v. Blue Cross*, 22 F.3d 839, 844 (9th Cir.1994). But if the district court does address, and denies, a Rule 56(f) motion, that decision is reviewed for an abuse of discretion. *Id.*

Although the district court in this case never ruled on the written Rule 56(f) motion, it did deny the Byrds' oral motion made at the pretrial conference. That oral motion, seeking to reopen discovery on the summary judgment issue, was essentially a Rule 56(f) motion. Because it had already ruled once, the district court had no need to address the issue again when it reappeared in the written

motion. Thus. we shall review the district court's decision for an abuse of discretion.

■ "We will only find that the district court abused its discretion if the movant diligently pursued its *previous* discovery opportunities, and if the movant can show how allowing *additional* discovery would have precluded summary judgment." *Qualls*, 22 F.3d at 844 (emphasis in original). In this case, the complaint was filed on January 29, 1993. The pretrial order states that the discovery cutoff date was April 5, 1994. Even assuming that the Byrds had to wait some months after filing their complaint to begin discovery under Fed.R.Civ.P. 26(d), they still had many months to complete discovery. The Byrds' only excuse is that they had "few resources" and "had tailored their discovery to meet the needs of the case." *See Appellants' Opening Brief at 32.* This is not a diligent pursuit of prior discovery opportunities under *Qualls.* We affirm the district court on this issue.

AFFIRMED.