[No. 18347-5-III. Division Three. June 15, 2000.]

THE ESTATE OF ELWOOD RAYVON LEE, ET AL., *Appellants*, v. CITY OF SPOKANE, ET AL., *Respondents*.

160

162

*Thomas M. Smith*; and *Dennis C. Cronin* (of *Maxey Law Office, P.S.*), for appellants.

*Rocco N. Treppiedi* (of *Perkins Coie, L.L.P.*); and *James C. Sloane, City Attorney*, and *John A. Level, Assistant*, for respondents.

SWEENEY, J. — The estate and survivors of Elwood R. Lee brought federal and state tort claims against the City of Spokane and two individual police officers after Mr. Lee was fatally shot during a domestic violence incident. The issues presented by their 42 U.S.C. § 1983 action are governed by two separate legal standards. Whether police used excessive force in seizing Mr. Lee is judged by the Fourth Amendment objective reasonableness standard. Here, the police shot Mr. Lee after he pointed a rifle at one of the officers. We conclude that the officers' conduct in effecting the seizure was objectively reasonable.

Whether Mr. Lee's survivors have a viable § 1983 action

based on violations of their own substantive due process rights under the Fourteenth Amendment turns on whether the officers acted with "deliberate indifference" to the family members in their use of force against Mr. Lee. Here, we conclude that the officers did not act with deliberate indifference. We, therefore, affirm the trial court's dismissal of the family's § 1983 action.

Because Mr. Lee's death was not wrongful, we also dismiss the remaining state survival and wrongful death claims.

## FACTS

Joan Lee and Elwood Lee were married and the parents of two young children, Rhiannon and Matthew. At 2:00 a.m. on February 27, 1993, Mr. Lee was drinking at a Spokane bowling alley bar. Ms. Lee piled the two kids and the family dog in the car and drove to the bar to bring him home because she did not want him to drive drunk. Once there, she grabbed Mr. Lee's truck keys and ran off. The couple yelled at each other in the parking lot. Mr. Lee took back his keys, shoved his wife, punched her in the back and the face, and drove off, leaving Ms. Lee and the children at the bar. Ms. Lee called 911 from the bowling alley.

Spokane Police Officers Benjamin Estes and Kevin Langford arrived at the bowling alley about 3:30 a.m. They interviewed Ms. Lee, concluded she was the victim of domestic violence and decided to talk to Mr. Lee. They considered a custodial arrest for fourth degree assault. And they had probable cause to arrest Mr. Lee for domestic violence.

Ms. Lee told the officers she wanted her husband re-moved from the residence so she could take the children home. And she wanted him arrested for assaulting her. She told the officers that Mr. Lee would be at the house. Officer Estes strongly urged her to remain at the bowling alley with the children until the situation at the house was resolved. But Ms. Lee insisted on going immediately to the house.

Officers Estes and Langford arrived at the Lee house a couple of minutes before Ms. Lee and the children, and parked across the street. They could see Mr. Lee's truck in the driveway, but could not see whether he was at home.

After Ms. Lee arrived, both officers tried to persuade her to stay with her children in the car while they dealt with Mr. Lee. She refused. She took the children and approached the front door.

Ms. Lee knew Mr. Lee had access to firearms but did not fear any danger. Officer Estes realized this was not going to be a normal call.

Officer Langford took up a position on Ms. Lee's right side. Officer Estes was to her left and behind her. She tried to unlock the door with her key, but Mr. Lee held the lock in the locked position. She asked him several times to let her in. Mr. Lee responded, "get the f*** out of here . . . or two people are going to die tonight." Ms. Lee backed away, taking the children with her.

Officer Langford also started to back away from the doorway. Officer Estes stayed in position. Mr. Lee opened the door. The officers could see a rifle with the scope pointed down. Officer Estes shouted "drop the gun, drop the gun." Mr. Lee refused. Instead he raised the rifle and pointed it "directly at Officer Langford's stomach and chest area." Both officers drew their guns. Officer Estes fired once at Mr. Lee. The door closed and the porch light went out.

Police did not know Mr. Lee's condition, and so followed the procedure for dealing with a barricaded, armed suspect. They spent several hours trying unsuccessfully to contact Mr. Lee by telephone. Finally, a SWAT team entered the house and discovered Mr. Lee dead behind the front door with a bullet wound in his forehead. He appeared to have been killed instantly. His blood alcohol was 0.12 percent. He was still holding the rifle, and had three other guns and "significant ammunition" at strategic locations in the house.

PROCEDURAL HISTORY

The surviving Lees filed a 42 U.S.C. § 1983 action for damages against the City of Spokane, Officer Estes and Officer Langford. They alleged violations of Mr. Lee's Fourth and Fourteenth Amendment rights and violations of the survivors' substantive due process rights under the Fourteenth Amendment. Both the estate and the survivors asserted state claims of wrongful death. The survivors also claimed negligent infliction of emotional distress and outrage.

The City and the officers moved for dismissal of all claims. The court granted summary dismissal on the § 1983 claims. The court dismissed Mr. Lee's personal wrongful death claim but refused to dismiss the family's wrongful death claims. It dismissed the claim of outrage, but refused to dismiss the claim of negligent infliction of emotional distress.

The Lees appeal. The City cross-appeals the court's refusal to dismiss the wrongful death claims and the claim for negligent infliction of emotional distress.

## DISCUSSION

### § 1983 CLAIMS

■ Civil action for deprivation of rights

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . for redress.

42 U.S.C. § 1983. The preferred approach to reviewing a § 1983 action is first to identify precisely which constitutional right, if any, has been violated, and only then to determine whether the defendants are entitled to qualified immunity. *County of Sacramento v. Lewis*, 523 U.S. 833,

841 n.5, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998); *Moreland v. Las Vegas Metro. Police Dep't,* 159 F.3d 365, 371 n.4 (9th Cir. 1998). We take that approach.

■ Standard of Review on Summary Judgment. We review an order of summary judgment de novo. *CLEAN v. City of Spokane,* 133 Wn.2d 455, 462, 947 P.2d 1169 (1997). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56; *CLEAN,* 133 Wn.2d at 462. We consider all the evidence in the light most favorable to the nonmoving party. *Morinaga v. Vue,* 85 Wn. App. 822, 828, 935 P.2d 637 (1997).

Section 1983 Fourth Amendment Claim. The Lees' § 1983 claim is predicated on the violations of Mr. Lee's Fourth Amendment rights. The heart of their Fourth Amendment claim focuses on the events leading up to the deadly confrontation. They contend that both officers unreasonably failed to avoid the confrontation, even if their conduct after Mr. Lee opened the door was objectively reasonable. The Lees urge that excessive force may be found where police conduct *preceding* the use of force is unreasonable and, thereby, *creates* the situation requiring deadly force. *Sevier v. City of Lawrence, Kan.,* 60 F.3d 695, 699 (10th Cir. 1995); *Alexander v. City & County of San Francisco,* 29 F.3d 1355, 1366 (9th Cir. 1994); *Wood v. Ostrander,* 879 F.2d 583, 594 (9th Cir. 1989); *Ward v. City of San Jose,* 737 F. Supp. 1502, 1507-08, 1510 (N.D. Cal. 1990), *aff'd in part, rev'd in part,* 967 F.2d 280 (9th Cir. 1991).

The City responds that reasonableness must be judged solely from the officers' point of view at the time and place of the seizure, not with 20/20 hindsight. *Graham v. Connor,* 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). And it contends it is not necessary that the officers' conduct leading up to the fatal confrontation be perfect. Whether the officers' collateral judgments could have been better is not the issue. *Id.* at 395-97. The question is: Was the conduct reasonable at the moment of seizure? *Scott v. Henrich,* 39 F.3d 912 (9th Cir. 1994). The City argues

further that it is not unlawful to shoot a suspected violent felon who is threatening immediate deadly force against an officer. *Tennessee v. Garner*, 471 U.S. 1, 11-12, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985).

We begin our analysis by first noting that Fourth Amendment rights are personal and may not be vicariously asserted. *Moreland*, 159 F.3d at 369 (citing *Alderman v. United States*, 394 U.S. 165, 174, 89 S. Ct. 961, 22 L. Ed. 2d 176 (1969)). Nor does 42 U.S.C. § 1983 create a vicarious cause of action. *Claybrook v. Birchwell*, 199 F.3d 350 (6th Cir. 2000); *Estate of Johnson v. Village of Libertyville*, 819 F.2d 174, 177-78 (7th Cir. 1987). The plaintiff must allege injury directly. *Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975).

█ The estate of a person killed as a result of excessive police force may, however, assert a Fourth Amendment claim on behalf of the decedent. *Moreland*, 159 F.3d at 369; *Byrd v. Guess*, 137 F.3d 1126, 1131 (9th Cir.), *cert. denied*, 525 U.S. 963, 119 S. Ct. 405, 142 L. Ed. 2d 329 (1998). As the representative of the estate, Ms. Lee then has standing to bring a § 1983 claim for violation of Mr. Lee's Fourth Amendment rights.

█ We analyze whether police officers used excessive force by an "objective reasonableness" standard. *Graham*, 490 U.S. at 395-97; *Garner*, 471 U.S. at 7-9. We evaluate the conduct from the point of view of reasonable officers on the scene, in light of the facts and circumstances confronting them, allowing for the necessity of split-second decisions, and without regard to the officers' underlying intent or motivation. *Graham*, 490 U.S. at 395-97.

The conclusion that conduct was reasonable depends on: (1) the severity of the underlying offense; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest. *Graham*, 490 U.S. at 396.

Use of deadly force is objectively reasonable if there is probable cause to believe the suspect poses a significant

threat of death or serious physical injury to the officer or others. *Garner*, 471 U.S. at 11-12.

The officers here had both probable cause and a statutory mandate to arrest Mr. Lee for domestic violence within the past four hours. They knew Mr. Lee was intoxicated and out of control. He threatened to kill people and then confronted them with a gun. He refused to drop the gun even when commanded to do so. He instead raised the gun and menaced both his family and Officer Langford.

The Lees correctly state the general rule that the reasonableness of a particular use of force is a question of fact and, therefore, not usually susceptible to summary judgment. *Staats v. Brown*, 139 Wn.2d 757, 775, 991 P.2d 615 (2000). Here the Lees do not, and cannot, dispute that the officers' actions were objectively reasonable at the instant of the shooting. They claim, rather, that the actions of the officers prior to the seizure, from their arrival at the bowling alley forward, were not reasonable. We disagree.

"Standard of the Moment." We will not "armchair quarterback" a police officer's use of deadly force. "It may appear, in the calm aftermath, that an officer could have taken a different course, but we do not hold the police to such a demanding standard." *Gardner v. Buerger*, 82 F.3d 248, 251 (8th Cir. 1996). We must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene, applying a "standard of the moment." *Staats*, 139 Wn.2d at 774. We ask whether the officers acted reasonably under settled law in the circumstances, not whether a more reasonable interpretation of the events can be constructed after the fact. *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991). We look only at the actual seizure, not the events leading up to the seizure. *Scott*, 39 F.3d at 915. Mere negligence that precipitates a confrontation is not actionable under § 1983. *Sevier*, 60 F.3d at 699 n.7 (citing *Daniels v. Williams*, 474 U.S. 327, 331-33, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986) (injuries resulting from government's negligence do not support a § 1983 due process claim) and *Yates v. City of Cleveland*, 941

F.2d 444, 447 (6th Cir. 1991) ("mere negligence" is not a basis for a § 1983 claim)). Thus, whether the officers should have anticipated armed resistance or implemented "barricaded suspect" procedures or some other tactical plan before Mr. Lee appeared in the doorway with the gun is not controlling here. *Scott*, 39 F.3d at 915. The conduct falls within a "range of objective reasonableness" even if the officers did not follow the most prudent course of action. *Schulz v. Long*, 44 F.3d 643, 648-49 (8th Cir. 1995) (citing other federal circuits in accord).

The Lees cite cases to the contrary. All are distinguishable. Without exception, these decisions address events preceding the shooting so immediately as to be part of the seizure itself. *Franklin v. Foxworth*, 31 F.3d 873, 875 (9th Cir. 1994) (officers force bedridden non-suspect to sit upright for hours with genitals exposed while they search the house); *Alexander*, 29 F.3d 1355 (officers storm home of man they know is an old, mentally ill, half-blind recluse to execute a home inspection warrant); *Sevier*, 60 F.3d 695 (addresses only conduct during seizure; "events leading up to" refers only to what happened after the officers arrived at the house).

The Lees concede that the conduct at the point of seizure was objectively reasonable. There are, therefore, no disputed material facts on this issue. And the court properly dismissed the § 1983 action, based on the Fourth Amendment violation claim.

<u>Section 1983 Fourteenth Amendment Substantive Due Process Claims.</u> The Lees next contend that their own Fourteenth Amendment rights to due process were violated because police conduct deprived them of their liberty interest in the companionship of Mr. Lee. *Byrd*, 137 F.3d at 1133-34; *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 371 (9th Cir. 1998).

The parents, spouse and children of a person killed by law enforcement officers may assert a § 1983 claim for violation of their own Fourteenth Amendment rights based on the deprivation of their own liberty interest in their

relationship with the decedent. *Byrd*, 137 F.3d at 1133-34. To establish a Fourteenth Amendment claim, the family must prove that the officers acted with deliberate indifference to their own rights to familial relationship by using excessive force against Mr. Lee. *County of Sacramento v. Lewis*, 523 U.S. 833, 841-45, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998); *Byrd*, 137 F.3d at 1134.

Neither the Lees nor the City presents the correct standard of review for a substantive due process claim. Whether a reasonable officer could have believed his conduct to be lawful is germane to the issue of qualified immunity only,[1] not, as the Lees contend, to the substantive due process analysis. *Hammer v. Gross*, 932 F.2d 842, 850 (9th Cir. 1991); *Lewis*, 523 U.S. at 841-45. The City proposes the Fourth Amendment reasonableness standard, but contends that only the federal government can be sued, and only the person seized can sue. The City misreads *Knoetze v. United States*, 634 F.2d 207 (5th Cir. 1981). In holding that constitutional protection "attaches only when the federal government seeks to deny a liberty or property interest," the court is restricting the protection to attempts to deny certain interests, not to a particular branch of government. The government entity involved just happens to be federal. *Id.* at 211.

The Fourth Amendment "reasonableness" standard does not apply to a third-party § 1983 action. *Lewis*, 523 U.S. at 843. Claims by people collaterally injured by police conduct—people who were not intended targets of the seizure—are evaluated according to substantive due process norms. *Brower v. County of Inyo*, 489 U.S. 593, 596, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989).

Substantive due process is violated only by "arbitrary conduct shocking to the conscience[.]" *Lewis*, 523 U.S. at 836. The Lees must show that the officers acted purposefully to cause harm to them, unrelated to the officers' legitimate objective, the arrest. *Id.*

---

[1] A question we discuss later in this opinion.

Like their Fourth Amendment claim, the Lees' Fourteenth Amendment claim rests on the premise that the police here created a danger, then failed to protect innocent people. The cases they rely on, however, are again distinguishable. In those cases, no danger existed outside of that caused by the police conduct.

In *Ward v. City of San Jose*,[2] police entered private yards during a nighttime drug raid in a dangerous neighborhood without notifying the adjacent property owners. Ward went to investigate the activity in his yard and the police shot him. The court ruled that the officers should have taken measures to protect Ward from this danger by, at the very least, informing him of their activities.

*Ward* gives other examples of police failing to protect citizens of danger the police themselves created. In *White v. Rochford*,[3] an officer left three children alone in an abandoned car on the side of a highway in inclement weather after taking their uncle to jail. In *Wood v. Ostrander*,[4] officers ordered the passenger out of an impounded car and left her alone in a high-crime neighborhood. She accepted a ride from a stranger who raped her.

Here, the police intervened on behalf of a family already in danger, both from further assault by Mr. Lee if they went home, and from the dangers of the street in the middle of the night if they did not. This is hardly "arbitrary conduct shocking to the conscience[.]" *Lewis*, 523 U.S. at 836.

Officers Estes and Langford did not act with the intent of deliberately inflicting suffering on this family.

### Qualified Immunity

Moreover, the officers would be immune from the claims asserted here anyway.

---

[2] 737 F. Supp. 1502 (N.D. Cal. 1990), *aff'd in part, rev'd in part*, 967 F.2d 280 (9th Cir. 1991).

[3] 592 F.2d 381 (7th Cir. 1979).

[4] 879 F.2d 583 (9th Cir. 1989).

We review claims of qualified immunity de novo. *Staats v. Brown*, 139 Wn.2d 757, 772, 991 P.2d 615 (2000). Police officers have qualified immunity from liability for civil damages for conduct that " 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). The purpose of qualified immunity is both to protect public officials from "disabling threats of liability," and to protect the public from official abuses of power. *Id.*

Officer Immunity. Where the claim is unreasonable force under the Fourth Amendment, the qualified immunity inquiry is the same as on the merits of the § 1983 Fourth Amendment claim. *Hopkins v. Andaya*, 958 F.2d 881, 885 n.3 (9th Cir. 1992). The officer is immune from personal liability if a reasonable officer could have believed the conduct was lawful. This is so even if the exercise of force was objectively unreasonable under the circumstances immediately facing the officers or manifested a patent disregard for the rights of the family members. *Hammer*, 932 F.2d at 850.

Officer Estes responded to a threat of deadly force with deadly force. A reasonable officer would believe this was lawful. Both officers are, therefore, immune from suit.

City Immunity. The City would also be immune from suit. In order to establish a § 1983 claim against a municipality, a plaintiff must: (1) identify a specific policy or custom; (2) demonstrate that the policy was sanctioned by those responsible for making that policy; (3) demonstrate a constitutional deprivation; and (4) establish a causal connection between the custom or policy and the constitutional deprivation. *Baldwin v. City of Seattle*, 55 Wn. App. 241, 248, 776 P.2d 1377 (1989). The City is liable only if a constitutional deprivation resulted from a city custom or policy. *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *Mission Springs, Inc. v. City of Spokane*, 134 Wn.2d 947, 968, 954 P.2d 250 (1998).

If the police did not use excessive force in making the arrest, there can be no municipal liability. "If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986) (emphasis omitted).

We need not address the city policies, because we find no constitutional violation by the individual officers.

STATE LAW CLAIMS

<u>Survival and Wrongful Death Claims.</u> The Lees next contend the trial court erred by dismissing their state survival and wrongful death claims.

There is no common law action for wrongful death; it is entirely statutory. *Cooper v. Runnels*, 48 Wn.2d 108, 110, 291 P.2d 657 (1955). The relevant statutes are of two types. Wrongful death statutes, which provide a cause of action for the *survivors* of a person tortiously killed to recover their own losses, and survival statutes, which preserve the *decedent's* claims for his own losses. *See*, Steve Andrews, Comment, *Survivability of Noneconomic Damages for Tortious Death in Washington*, 21 SEATTLE U. L. REV. 625 (1998); J. Gregory Casey, Comment, *Washington Wrongful Death and Survival Actions*, 6 GONZ. L. REV. 314 (1971).

The general wrongful death statute, RCW 4.20.010, creates a cause of action in the name of the personal representative to recover for losses suffered *by the survivors*. The benefits do not inure to the estate, but belong to the survivors. *Wood v. Dunlop*, 83 Wn.2d 719, 724, 521 P.2d 1177 (1974). RCW 4.20.046 and .060 both preserve the decedent's own claims for the losses suffered by himself personally. A surviving wife and child may then assert a claim pursuant to RCW 4.20.060 when, as here, the personal injuries result in the death.

But both causes of action require that the death be wrongful. And the death here was not wrongful. The defendants breached no duty to the decedent. And the deceased "proximately contributed, through . . . unlawful acts, to his own injury[.]" *Johnson v. Ottomeier*, 45 Wn.2d 419, 422, 275 P.2d 723 (1954).

The trial court here concluded that Mr. Lee's death was *not* wrongful and dismissed the survival action. Mr. Lee, therefore, had no surviving claims. The court then went on to conclude that since weapons were strategically located inside the house before the police and the family arrived, the events that followed were unforeseeable as a matter of law. It then concluded that the death was not wrongful. Report of Proceedings[5] at 8-9. But the court refused to dismiss the family's wrongful death claims. By implication then, it necessarily concluded that the death *was* wrongful. Report of Proceedings at 9-10. This was error.

The focus of the wrongful death statute, RCW 4.20.010, is whether the police breached a duty owed *to Mr. Lee*. The family can claim only pecuniary losses such as financial support and consortium if the death was wrongful. RCW 4.20.010; *Chapple v. Ganger*, 851 F. Supp. 1481, 1487 (E.D. Wash. 1994). In preserving the family's wrongful death claim, the court lists as disputed material facts whether it was foreseeable that the family would suffer distress and whether the officers met the reasonableness standard in avoiding the family's distress. These fact questions are not, however, material to the wrongful death claim. The focus of the inquiry for both the survival action and wrongful death claims is the officers' conduct directed at Mr. Lee himself— not the family. Taking the plaintiffs' statement of the facts at face value, it does not support the "wrongful" element of the wrongful death and survival actions as a matter of law.

The summary dismissal of the RCW 4.20.046 and .060 (survival) claims was correct. Necessarily then, the court's refusal to dismiss the RCW 4.20.010 and .020 (wrongful death) claims was erroneous.

---

[5] Verbatim Report of Proceedings (Mar. 29, 1999).

■ Outrage. The tort of outrage requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Grimsby v. Samson*, 85 Wn.2d 52, 59, 530 P.2d 291 (1975) (emphasis omitted) (quoting RESTATEMENT (SECOND) OF TORTS § 46, cmt. d (1965)).

To succeed in their claim of outrage, the Lees must establish a breach of the duty of care owed by the officers *to the family members*.

No reasonable jury could find that the officers' interactions with the victims of the felony they were investigating even approached the outrage threshold, based on the events set forth in this opinion.

## CROSS-APPEAL

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

The City contends that the trial court erred in refusing to dismiss the Lees' claim for negligent infliction of emotional distress.

■ This claim relies on the "bystander" theory of recovery. The bystander doctrine allows family members traumatized by witnessing the scene of injuries caused by negligent conduct directed at a loved one to recover for their emotional distress. *Hegel v. McMahon*, 136 Wn.2d 122, 128, 960 P.2d 424 (1998).

The court concluded the Lees presented evidence sufficient to go to a jury. This was error. A crucial element is missing. The bystander theory of recovery is a collateral claim for damages suffered indirectly as the result of the defendant's breach of a duty *owed to the decedent*. For example, an injured motorist's relatives come on the scene while the motorist is still lying horribly wounded in a ditch; a father arrives and witnesses the death of his son in a motorcycle accident. *Id*. at 124-25. The negligent conduct is clearly established. Only the scope of liability is at issue.

To recover under the bystander theory, the Lees would have to establish that the defendants breached a duty owed to Mr. Lee.

The Lees' situation differs from the typical bystander's in that the defendants here participated in bringing them to the scene. Any recovery for emotional distress arises, therefore, under general tort principles out of the officers' conduct directed at the Lees. General tort principles create an independent cause of action for negligent infliction of emotional distress for a plaintiff who can establish the elements of duty, breach, proximate cause and damages. *Hunsley v. Giard*, 87 Wn.2d 424, 434, 553 P.2d 1096 (1976). "The element of foreseeability plays a large part in determining the scope of defendant's duty." *Id.* at 435. Nevertheless, this claim depends entirely on a finding of wrongful conduct by the officers. And, as we have concluded, their conduct was not wrongful. The Lees have, therefore, no cause of action for negligent infliction of emotional distress.

### State Statutory Defenses

Finally, we agree with the City that it has two additional immunity defenses.

Again, our review is de novo. *Wollin v. Gondert*, 192 F.3d 616, 621 (7th Cir. 1999). We construe all facts and inferences most favorably to the nonmoving party. CR 56; *Staats v. Brown*, 139 Wn.2d 757, 764, 991 P.2d 615 (2000).

 Common Law Immunity. Police officers have common law qualified immunity from state tort claims if their conduct meets a three-part test: (1) they are carrying out a statutory duty, (2) according to the procedures dictated by statute and superiors, and (3) they acted reasonably. *Guffey v. State*, 103 Wn.2d 144, 152, 690 P.2d 1163 (1984); *Staats*, 139 Wn.2d at 778 (false arrest and assault and battery).

Here, the domestic violence statute, chapter 10.99 RCW, required the officers to arrest Mr. Lee. RCW 10.99.030(6) (former RCW 10.99.030(3) (1993)). RCW 10.31.100 authorizes them to do so without a warrant. *Roy v. City of Everett*,

118 Wn.2d 352, 360, 823 P.2d 1084 (1992). By the Lees' own admission, City policy gives the officers the discretion to carry out the arrest as they see fit. Because they acted reasonably here, they are immune under common law.

Statutory Immunity. "A peace officer shall not be held liable in any civil action for an arrest based on probable cause, enforcement in good faith of a court order, or any other action or omission in good faith under this chapter arising from an alleged incident of domestic violence brought by any party to the incident." RCW 10.99.070.

This qualified immunity statute was interpreted in *Roy* as granting immunity for conduct occurring in the course of an arrest. *Roy*, 118 Wn.2d at 357-58.

The Lees contend "good faith" is always a jury issue. But we cannot find any difference between the question of good faith and the question of federal immunity which turns on whether officers could have believed their conduct to be "lawful, in light of clearly established law[.]" *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).

The whole point of qualified immunity is to provide protection from the necessity of defending the suit in the first place. "Because qualified immunity entitles a government official to immunity from suit rather than a mere defense to liability, it is essential that 'insubstantial claims' be resolved as quickly as possible." *Orwick v. Fox*, 65 Wn. App. 71, 83-84, 828 P.2d 12 (1992). Entitlement to qualified immunity may be established, and was established here, as a matter of law. *Robinson v. City of Seattle*, 119 Wn.2d 34, 65, 830 P.2d 318 (1992).

By the plaintiffs' own account, Mr. Lee pointed a gun at Officer Langford and Ms. Lee after threatening to shoot them. This is first degree assault, a felony. RCW 9A.36.011.

It is a complete defense to any action for damages for wrongful death that the person killed was engaged at the time in the commission of a felony and that the felony was a proximate cause of death. RCW 4.24.420.

## HOLDING

In sum, our disposition is to:

(1) affirm the summary dismissal of the 42 U.S.C. § 1983 claims;

(2) affirm summary dismissal of the RCW 4.20.046 and 4.20.060 (survival) claims;

(3) reverse the denial of summary judgment of the RCW 4.20.010 and 4.20.020 (wrongful death) claims;

(4) affirm the summary dismissal of the outrage claim; and

(5) reverse the denial of summary judgment on the negligent infliction of emotional distress claim.

Kurtz, C.J., and KATO, J., concur.

Review denied at 142 Wn.2d 1014 (2000).